ALBION KNIGHT, Defendant in Error, *vs.* SAMUEL ELLIOTT, Plaintiff in Error.

57 317
114 430
114 436
57 317
132 382
57 317
136 497

1. *Land and land titles—Quarter section corners, how ascertained in exterior sections bounded by township or range line—Regulations of U. S. Land Department—Rule as to interior sections, etc.*—Where the original monuments fixed by the United States for the corners bounding a tract of land can be found and identified, they are conclusive, and will govern without regard to courses and distances. But the regulations of the United States Land Department require that in exterior sections bounded on the north or west by range or township lines, where the quarter section corners cannot be found, the interior corner of the section shall be first found and established; from which exactly forty chains shall be measured along the line in the direction of the township or range line, and at that point the quarter section corner is to be placed; and this always leaves the excess or deficiency to the quarter directly on the township or range line. And it makes no difference whether the fraction contains more or less than the number of acres shown by the government field notes. And where the statute of this State conflicts with the regulations of the U. S. Land Department on this subject, the latter must govern.

In interior sections, where the original quarter section corners cannot be found or proved, they are to be established at a point equi-distant from the corresponding corners of the section.

*Error to Chariton Circuit Court.*

*Turner & Caples and Shackleford,* for Plaintiff in Error.

I. The laws of congress prescribing the mode of surveying and sub-dividing fractional sections, are only applicable to the original surveying and sub-dividing of such sections by the government, and have no bearing on subsequent surveys made for the purpose of ascertaining where the lines were originally run; and are therefore not in conflict with the statute of Missouri, regulating such subsequent surveys.

*L. H. Waters and C. Hammond,* for Defendant in Error.

I. The acts of congress and the rules and regulations prescribed by the General Land Office, under which the public lands were surveyed, must be observed in re-locating lines, and in re-establishing lost corners, so far as the same are applicable.

In re-establishing lost corners, the surveyor must conform if possible to the government surveys. The course to ascertain

the true corners and to establish them in section 18, when the south east corner is found or established, is to run west on the south line forty chains, which would make the quarter section corner, and then run to the south west corner of the section. This would give to the south east quarter 160 acres, and throw the surplus or deficiency with the south west quarter. (See General Instructions from Land Office, etc.)

II. The original surveys establish the rights of the parties, and must govern. (May vs. Baskin, 12 Sm. & M., 429 ; Baker vs. Dalbert, 6 Mon., 182 ; Colvin vs. Fell, 40 Ill., 418.)

VORIES, Judge, delivered the opinion of the court.

This was an action of trespass, brought in the Chariton Circuit Court to recover damages for certain trespasses, charged to have been committed by the defendant on the lands of the plaintiff.

The defendant in his answer claimed to be the owner of the lands on which the trespasses were charged to have been committed.

It is shown by the facts appearing in the bill of exceptions, that the plaintiff and defendant were adjoining owners and proprietors of lands situated in the south half of section 18, in township 54, of range 19, in Chariton county, Missouri, the plaintiff being the owner and in the possession of the south west quarter, and the defendant being the owner and in the possession of the south east quarter of said section.

It seems that the respective parties, and those under whom they claim, had been in possession of their respective tracts of lands for eighteen or nineteen years ; that shortly after these lands were occupied by the parties, a partition fence was erected by them for the purpose of separating their lands, and that the plaintiff occupied and cultivated the lands, on and up to the west side of said fence, the defendant occupying and cultivating on the east side of the fence. This fence started from a point on the south line or boundary of said section. just forty chains from the south east corner of said section, and was run directly north ; which would leave as the quan-

tity of land contained in the south east quarter of said section just one hundred and sixty acres, leaving the remainder of the half section, which bounded on the township line on the west, and was fractional, for the plaintiff, who it is admitted was the owner of the south west quarter of said section.

This division fence, after remaining for several years, was removed by the parties, and the lands of the plaintiff and defendant situated on either side of said line were thrown into a common inclosure with no fence between them; but the parties continued to cultivate as before, each one up to the line from which the fence had been removed on his respective side thereof, until the year 1870, the time of the origin of the difficulty out of which this action grew.

By the field notes of the government survey and sub-division of this section of land, the south line of the south east quarter is stated to be forty chains long, and the south line of the south west quarter (which is fractional) is stated to be 35.42 chains long, making the whole south line of the section 75.42 chains; but by a recent survey of this section, made in 1870, the south line of said section was found to measure 77.79 chains, making an excess over the reported length of the line of 2.37 chains. The surveyor, in order to fix a dividing line between the south east and south west quarters of the section, divided this excess between the two quarters, in proportion to the reported quantities in each, thus placing the quarter section corner in the south line of the section, 41.25 chains west of the south east corner of the section, and giving the remainder of the surplus to the south west fractional quarter, which belonged to the plaintiff. By this survey, the south east quarter is made to contain 165.09 acres, and the south west quarter 143.22 acres.

By this means 5.09 acres on the west of the line to which the parties had previously cultivated were added to the south east quarter; consisting of a strip along the entire west side of the south east quarter, which was taken from the fields cultivated and occupied by the plaintiff.

After this survey the defendant entered on this strip of land thus taken from the plaintiff's field, and commenced to erect a fence on this new line thus established by said survey. For this entry the present action of trespass was commenced by the plaintiff.

The original corner between these quarters of land on the south line had been lost or obliterated.

Several surveyors were examined as witnesses at the trial; those introduced by the defendant testifying that the proper method to establish lost quarter section corners, was to place the corner at a point of equal distance from the exterior corners of the section, and to thus divide the excess or deficiency above or below the distances named in the government surveys, equally between the different quarters, and in fractional sections the excess must be divided in proportion to the reported quantity in each quarter. The surveyors who were introduced by the plaintiff agree, that in interior sections where quarter section corners have been lost, the proper way to re-establish said lost corners, is to first find the corners of the section, and place the quarter section corner at the center point on the line between the two corners; but they contend that a different rule must be, and always is, adopted, and is required by the regulations of the Land Department of the United States, in the sub-division of sections bordering on the north and west lines of township, which are generally what are called anomalous or fractional sections; that in such sections, in order to establish a lost quarter section corner, if, as in this case, the section is bounded on the west by a township line, it must be sub-divided and the corners found by first finding the interior corner of the section, and from thence running west exactly forty chains, at which point the quarter section corner is placed, leaving what remains between that point and the township line to constitute the south west or north west quarter, as the case may be, without regard to quantity or distance, thus throwing the fractions on the township line

These being substantially the facts as proved in the case, and the case being on trial without the intervention of a jury, the court, among other declarations of law made in the case at the instance of the plaintiff, declared the law to be:

1st. "The State cannot make any rule or law in conflict with the laws of congress, and the instructions of the General Land Office Department, given in pursuance thereof."

2d. "In sub-dividing fractional sections lying upon the range line, any excess in the length of the east and west lines over the original length of such lines, as surveyed by the government surveyors, should be assigned to the fractional quarter where the same would have been left if ascertained in the original survey as made by the government; and the defendant in this case, as the owner of the south east quarter of section eighteen is entitled to no part of any excess that may be found in the length of the south line of section eighteen."

3d. "If in the original sub-division of section eighteen, the south west corner of the south east quarter was established at a point forty chains west of the south east corner of that section, and returned in the survey, then the said corner is to be respected, however distant it may have been from the range line on the west; and if such corner cannot be found by searching for the monument, then it must be ascertained by running forty chains from the south east corner of section eighteen."

4th. "If the defendant entered upon the possession of the plaintiff, then the plaintiff is entitled to recover at least nominal damages, whether he was the owner of the land or not."

These declarations of law were objected to by the defendant, and exceptions taken. Declarations of law were asked by the defendant, directly to the converse of those given for the plaintiff, and were refused by the court, and the defendant excepted.

The court found for the plaintiff and rendered a judgment in his favor for nominal damages. The defendant in due time filed his motion for a new trial, which being overruled, the case has been brought to this court by writ of error.

The only question involved in this case necessary to be considered, depends upon the correctness or incorrectness of the method adopted by the surveyor in 1870, to re-establish the quarter section corners between the south east and south west quarters of section eighteen, on the south boundary of said section. It is contended by the defendant, that our statute furnishes the proper and only legal mode of ascertaining and fixing the location of lost quarter section corners under such circumstances.

By the 30th section of the statute of this State, concerning county surveyors, it is provided that, "In sub-dividing fractional sections, it shall be required to divide the excess or deficiency in length of lines over or under the original length of the lines as surveyed by the deputy United States surveyor, in due proportions amongst the several sub-divisions."

Now it is insisted, that, as section eighteen bounds on the range line on the west, and is fractional, and as the survey shows that the line extending west from the south east corner of said section to the range line, proves to be over two chains longer than it is shown to be by the United States survey, that this excess must be divided equally between the south east and south west quarters of said sections in proportion to their respective quantities of land. If this proposition be true, then the land on which the trespass sued for was committed, is the land of the defendant, and the judgment should have been in his favor, It is, however, insisted by the plaintiff, that in establishing lost quarter section corners in exterior sections which are bounded on the north or west by township. and range lines, and which are generally anomalous or fractional sections, a different rule is established by the act of congress, and the regulations made by the land department under said laws. It is further insisted, that the laws and regulations of the United States on said subject are in direct conflict with the section of the statute of this State before referred to, and that said statute being in conflict with the laws and regulations of the United States, made for the disposal and survey of the public lands, is inoperative so far as the rights of the plaintiff are concerned.

By the 2d section of the act of congress of the 11th of February, 1805, it is provided as follows; "Sec. 2nd. And be it further enacted, that the boundaries and contents of the several sections, half sections and quarter sections of the public lands of the United States, shall be ascertained in conformity with the following principles, any act or acts to the contrary notwithstanding:

1st. "All the corners marked in the surveys returned by the surveyor general, or by the surveyor of land south of the State of Tennessee, respectively, shall be established as the proper corners of the sections which they were intended to designate; and the corners of half and quarter sections not marked on the said surveys, shall be placed as nearly as possible equidistant from those two corners which stand on the same line.

2nd. "The boundary lines actually run and marked in the surveys returned by the surveyor general, or by the surveyor of the land south of the State of Tennessee, respectively, shall be established as the proper boundary lines of the sections, or sub-divisions, for which they were intended; and the length of such lines as returned by either of the surveyors aforesaid, shall be held and considered as the true length thereof, and the boundary lines which shall not have been actually run and marked as aforesaid, shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships, where no such opposite corresponding corners have been or can be fixed, the said boundary lines shall be ascertained by running from the established corners due north and south, or east and west lines, as the case may be, to the water course, Indian boundary line, or other external boundary of such fractional township.

3rd. "Each section or sub-division of section, the contents whereof shall have been, or, by virtue of the first section of this act, shall be returned by the surveyor general, or by the surveyor of the public lands south of the State of Tennessee, respectively, shall be held and considered as containing the exact quantity expressed in such return or returns; and the

half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they make part." (U. S. Statutes at Large, Vol. 2, p. 313.)

By the 1st section of the Act of congress, passed April 24th, 1820, it is provided as follows :

"That from and after the first day of July next, all the public lands of the United States, the sale of which is or may be authorized by law, shall, when offered at public sale to the highest bidder, be offered in half quarter sections ; and when offered at private sale, may be purchased at the option of the purchaser, either in entire sections, half sections, quarter sections, or half quarter sections ; and in every case of the division of quarter sections, the line for the division thereof shall run north and south, and the corners and contents of half quarter sections, which may thereafter be sold, shall be ascertained in the manner and on the principles directed and prescribed by the second section of an act entitled, ' An act concerning the mode of surveying the public lands of the United States,' passed on the 11th day of February, 1805 ; and fractional sections containing one hundred and sixty acres, or upwards, shall, in like manner, as nearly as practicable, be sub-divided into half quarter sections, under such rules and regulations as may be prescribed by the secretary of the treasury ; but fractional sections, containing less than one hundred and sixty acres, shall not be divided, but shall be sold entire." (U. S. Stat. at Large, Vol. 3, p. 566.)

In conformity with these laws, rules and regulations were prescribed by the proper department for the surveying of the public land, and for the sub-dividing the same ; and also for finding quarter section corners which had been lost ; by which it will be seen that an entirely different rule and method was provided for the sub-division of sections bounding on the north and west boundaries of a township, from that which was followed in the sub-division of interior sections. These regulations provided, that "quarter section corners, both upon

north and south and upon east and west lines, are to be established at a point equi-distant from the corresponding section corners, except upon the lines closing on the north and west boundaries of the township; and in those situations the quarter section corners will always be established at precisely forty chains to the north or west (as the case may be) of the respective section corners from which these lines respectively start; by which procedure the excess or deficiency in the measurement will be thrown, according to law, on the extreme tier of quarter sections." (Lester's Land Laws and Regulations, p. 722; Manual of Surveying Instructions, p. 26; Keesling vs. Fruit, 30 Ind., 306.)

There is no question but that where the original monuments fixed by the government for the corners bounding a tract of land can be found and identified, they are conclusive, and will govern without regard to courses and distances; but where these monuments cannot be found, the regulations of the United States Land Department require, that in sections bounded by township or range lines, where the quarter section corners cannot be found (as was the case in reference to the survey made in this case) the quarter section corner must be established by first finding or establishing the interior corners of the section, from which you are to measure exactly forty chains along the line in the direction of the township or range line, where the quarter section corner is to be placed; and which always leaves the excess or deficiency to the quarter directly on the township line; and it makes no difference whether the fraction contains more or less than the number of acres shown by the government field notes. In interior sections, corners are always established where the original corners cannot be found or proved, at a point equi-distant from the corresponding corners of the section.

We think that when the plaintiff purchased the south west quarter of section eighteen, he became invested with a title to the whole fractional quarter section, which consisted of all the land lying between a point forty chains west of the south east corner of the section and the range or township line; or

in other words, that his fractional quarter section would be bounded on the east by a line running north from a point on the south line of said section, forty chains from the south east corner of said section, and on the west by the township or range line; and if the statute of this State is to be construed so as to divest the plaintiff of any portion of this land, it would be inoperative for said purpose. In such case the laws and regulations of the United States must govern the plaintiff's rights in the premises.

We see no fault in the declarations of law made by the court; for which reason the defendant's motion for a new trial was properly overruled, and the judgment will be affirmed. Judge Sherwood absent; the other judges concur.