### C. E. JAMES ET AL. *v.* GAYDEN DREW ET AL.

BOUNDARIES. *Surveys. Shortage; how apportioned.*

> Where the government map and original field notes show all the sections of a township to be full, but all monuments between the two northern tiers of sections are lost, and surveys based on established monuments in the township show that there is a shortage in the measurement north and south of those two tiers, it should not fall wholly on the northern tier, but should be apportioned equally between the two tiers, and this, although the survey was originally made by starting at the southeast corner of the township and working north.

FROM the circuit court of Washington county.

HON. GEORGE WINSTON, Judge.

Ejectment by appellees against appellants. The facts essential to an understanding of the only point passed upon by the court are stated in the opinion. The verdict and judgment were in favor of plaintiffs. Motion for a new trial was overruled, and defendants appealed.

*Campbell & Starling,* for appellants.

The effect of the rulings of the court upon the admissibility of evidence was that the shortage must fall on the northern tier of sections, and consequently that the land in controversy instead of being in sections 2 and 3 was in sections 10 and 11. This is con-

trary to law. The shortage in a case like this should not fall wholly on the northern tier of sections, but should be divided between the tiers of sections lying along the disputed boundary. *Jones* v. *Kimble*, 19 Wis. 429; *Moreland* v. *Page*, 2 Clarke (Iowa), 139; Tiedeman on Real Prop. § 832; Am. & Eng. Enc. of Law, title "Boundaries."

*Jayne & Watson*, on the same side.

The court erroneously permitted surveyors, who were witnesses, to testify that the shortage, as surveys are generally made, should fall upon the northern tier of sections, containing the sections owned by appellants. This is not a matter of fact for witnesses, but a matter of law. It is for the court to decide questions of law. If the field notes of the original survey had shown this shortage, another question would be presented, but such is not the case. The record of the survey shows a full township. If then there is a shortage, it should not fall wholly upon appellants.

*Yerger & Percy*, for appellees.

The finding of the jury on the question of fact as to the location of the disputed boundary should not be disturbed. A question of location is one of fact for the jury. 7 Atlantic Reporter, 886; Tiedeman on Real Prop. 831.

There was evidence by competent surveyors that all the tiers of sections, except the two tiers on the north, were marked by well-established monuments. These monuments were found by surveying by reverse courses to ascertain corners and correct lines of the survey, and this method has been held to be proper. 2 Am. & Eng. Enc. of Law, 503; 30 Am. Dec. 742.

It being established that the shortage is somewhere in the two northern tiers, it follows that it should fall upon the northern tier, because: (1) the field notes show that the township was broken into sections measuring from the south; and (2) where there is a shortage, the rule governing surveys requires it to be placed in the northern tier of sections. Revised Statutes U. S. § 2395.

The southwest corner of section 10 in the second tier being established by monuments, a surveyor called upon to locate the

northern boundary of section 10 should proceed from the south-
west corner, and give to that section its full measure according to
the field notes. This being done, he should proceed, working to
the north, and the shortage would necessarily fall upon the northern
tier of sections.

Woods, C. J., delivered the opinion of the court.

The record in the case before us presents for consideration the
rights of ownership in interior and exterior sections of land in a
particular township in which, as is alleged and shown for appellees,
there is a shortage, on north and south lines, of about 17 chains.
It is the case of a lost boundary between interior and exterior sec-
tions. The question is, shall the shortage fall upon the exterior
northern tier of sections, or shall it be apportioned ratably between
the exterior and interior sections, the boundary line between which,
as originally established and marked out upon the ground, having
been lost?

Assuming that the original corner between sections 13 and 14,
on the one side, and sections 23 and 24 on the other side of the
line dividing middle tiers of sections of the township, has been
established, and that the original quarter-section corner between
sections 16 and 17 has also been established, and assuming, as we
are warranted in doing by all the evidence on this point on both
sides, that the northern line of sections 2 and 3 (which is also the
northern boundary of the township) is where placed by appellants'
witnesses, Murray and Fontaine, it is manifest that there is a short-
age in the two upper tiers of sections, that embracing 10 and 11
and that embracing 2 and 3, of about 17 chains.

The original survey and field notes show the township and each
of its sections to be full. It appears from the evidence that the yet
remaining marks and monuments of the original survey demon-
strate with reasonable certainty that the several sections lying in
the first four tiers, beginning to count from the southern line of
the township, are all full sections, as shown on the original map of
the survey and the field notes. The shortage, then, is necessarily

to be looked for and found in the territory in which sections 2 and 3 and 10 and 11 are situated.

We have, then, the southern boundary of 10 and 11 ascertained and known, and the northern boundary of 2 and 3 likewise ascertained and known; and we have no monuments, so far as this record discloses, by which to fix the boundary line between 2 and 3, on the one side, and 10 and 11 on the other. As to every other boundary line in the township, so far as now appears to us, there is or may be had certain knowledge. As to this vital line in the disputed territory, we grope in impenetrable darkness.

In this state of the case, what rule must govern? In every case where purchasers acquired title to lands, situated as are those involved in this litigation, shown by the original survey and field notes to be full sections, but subsequently ascertained to be fractional in some part, deficient in acreage somewhere, and the dividing boundary originally marked out on the ground is irrevocably lost, upon whom shall the shortage be placed?

The trial below was had, we think, upon the theory that the loss must fall upon the owners of the northern tier of sections. This theory must be supported by reference to the manner of the original survey and the regulations controlling such survey. The original survey must have been begun, after the running and establishment of the township lines, in the southeast corner of the township, and thence working northward in laying off full sections, and, by necessity, putting any excess, or deficiency, in quantity of land, in the only remaining sections, viz., those constituting the northern tier. Such is the manner in which original surveys are made, and such course is consonant with reason and experience. But in the case at bar, the original survey and field notes, introduced by appellees, show all the sections full, and there was no excess or deficiency to be placed on any tier of sections. The natural monuments yet remaining show no deficiency in any of the tiers of sections south of those embracing the disputed territory. The deficiency lies in the first and second tiers on the northern border, clearly, and the original survey and field notes have not paid any regard to it. Looked at in this way, we do not see how the theory,

based upon the manner of making the original survey, can be maintained.

The case before us is one in which the government map of the original survey and the field notes show all the sections of the township to be full sections. It was a purchase by the owners, as we must conclude, of full sections, as they supposed and had reason to believe. After all monuments have been destroyed or lost, it appears that the original survey was erroneous, and that the original boundary cannot be established. Shall the hardship of the entire loss resulting from such shortage, under such circumstances, be borne by the owner of the northern sections? Would not the imposition of this burden be purely arbitrary and inequitable? Will we be authorized in entertaining the presumption that the shortage of the north and south line arose out of error of original survey of that particular part of the line in the extreme northern tier of sections? Rather, will not justice require us to presume that the shortage arose from error in the original survey of the whole line in the disputed territory? We feel constrained to take the latter as the true ground. If we are correct in this, reason and conscience would plainly require the shortage to be apportioned among the owners of the sections, or subdivisions of sections, ratably, lying on the line of shortage.

This general statement of our opinion is in harmony with the current of authority. See Tiedeman, Real Property, § 832; 2 Am. & Eng. Enc. L. 503; 2 Clarke (Iowa), 139; 19 Wis. 429.

We have carefully examined the Missouri cases holding to the contrary view, but we find nothing in them which at all tends to impair our confidence in the doctrine to which we give our assent. The case in 1 Gratt. p. 211, is not, we think, necessarily in conflict with our opinion.

While no instructions were given the jury on the trial below, some of the rulings of the court on the admission of evidence, violated the rule governing in cases like the present, as herein laid down.

*Reversed and remanded.*