TOLSON *v.* SOUTHWESTERN IMPROVEMENT ASSOCIATION.

Opinion delivered January 2, 1911.

SURVEYS—MISTAKE—APPORTIONMENT.—Where the official government survey established the section and quarter-section corners, such corners will stand though erroneous, but a deficiency or overplus in a quarter section will be apportioned among the subdivisions of which it is composed.

Appeal from Cleveland Chancery Court; *John M. Elliott,* Chancellor; reversed.

*C. A. Cunningham,* for appellant.

The excess of three chains and 62 links should be thrown on the north tier of lots. 23 Ark. 710. No change having been made by the government in the Allis survey of section 6, none can be made now. 88 Ark. 37. The southwest corner of this

section, established by the government surveyors, controls the location of the lines between lots 11 and 18, though the section line may be deflected from a direct course. 85 Ia. 398. Each section is independent of every other. 7 Porter (Ala.) 428. In ascertaining boundaries, in the absence of any other controlling influence, attention should be given to the figure of the survey as shown on the original plat. 107 S. W. 307.

Appellee, *pro se.*

Where there is an excess of land in one section and a scarcity in another, caused by a deflection from the true course in running the dividing line, the excess is not to be carried anywhere, but is *to be left where it falls.* 23 Ark. 710. The rule that all fractions must be thrown on the north and west where the surveys are closed is sound, but not applicable in this case because (1) it is instruction to government deputy surveyors, and not addressed to county surveyors, who are bound by law to conform their surveys to the original. Kirby's Dig. § 1136. (2) The excess out of which this suit has grown is not due to an irregular length of the township. Land Laws U. S. 511; 23 Ark. 710.

Hart, J.   This is a suit to settle the boundary line between lots 11 and 18 in section 6, township 9 south, range 10 west, in Cleveland County, Arkansas. The section is fractional, and the north half is divided into lots numbered from 1 to 18 inclusive. According to the plat of the original survey, both lots 11 and 18 are in the western tier of lots in the north half of the section, and lot 11 contains 38.98 acres, and lot 18 contains 38.41. Lot 11 is immediately north of lot 18. John C. Barnes became owner of both these lots by mesne conveyances from the United States Government. Appellant, George L. Tolson, by purchase, became owner of all that part of lot 11 lying south and east of the St. Louis Southwestern Railroad, containing 18 acres more or less, and lying adjoining and north of lot 18. John C. Barnes by deed conveyed lot 18 to the Southwestern Improvement Association, a corporation, which caused it to be surveyed and platted as the East Addition to the town of Rison. The other appellees bought lots from the corporation immediately adjoining lot 11, and bought with reference to the map or plat made by the corporation.

The suit was instituted by appellant. He does not claim title to the land by adverse possession, but the prayer of the complaint is that the court establish the boundary line between lots 11 and 18. The testimony on the part of appellees does not establish an adverse claim to the strip of land in controversy for the statutory period. Hence there can be no question of title by adverse possession, as was the case in *Goodwin* v. *Garabaldi*, 83 Ark. 74, and that class of cases; and the sole issue raised by the appeal is, what is the true boundary between the parties?

The official plat of the United States Government shows that the boundary line between lots 11 and 18 is 60 chains north of the south boundary line of the section, and runs parallel with it; and it also shows that the western boundary line of the section from south to north is 130 chains. By actual measurement this line is 133 chains and 62 links. The evidence shows that the original survey was defectively made, and that the southwest corner of this section was established three chains and 62 links too far south; and this obviously makes a difference of that amount in the length of the west line of the section as shown by the official plat, and as it exists by actual measurement. Appellant claims that he is entitled to the excess because the official plat shows that the distance north from the southwest corner of the section to the northwest corner of lot 18 is 60 chains, that this excess of three chains and 62 links should fall on lot 11; but it will also be noted that the official plat shows that the distance north and south on the west line of lot 11 is 2c chains, and that the purchases were all made with reference to the public survey.

"In the case of government sections, interior lines in the extreme northern or western tiers of quarter sections, containing either more or less than the regular quantity, are to be 20 chains wide, and the excess or deficiency of measurement is always to be thrown on the exterior lots; elsewhere the assumed subdivisional corner will always be a point equidistant from the established corners. This rule, however, has no application where the original surveys are found to be erroneous, in which case the excess or deficiency is to be apportioned to each sub-

division within the boundaries where the corners are lost." 5 Cyc. p. 974, and notes.

In the case of *Caylor* v. *Luzadder*, 137 Ind. 319, 45 Am. St. 183, 36 N. E. 909, the court recognized the general rule, but said: "There seems to be a well-recognized distinction between this rule as applied to original surveys, whether in the making of such surveys or in alloting the deficiency or overplus, when the correctness of such surveys is not questioned, and that where such original surveys are found to have been erroneous or the original corners and lines are wholly lost."

The following authorities which we have examined are cited as recognizing the distinction: *Bailey* v. *Chamblin*, 20 Ind. 33; *Jones* v. *Kimble*, 19 Wis. 452; *Moreland* v. *Page*, 2 Clarke (Iowa) 139; *Westphal* v. *Schultz*, 48 Wis. 75; *James* v. *Drew*, (Miss.) 24 Am. St. Rep. 287.

The Supreme Court of Missouri has taken the contrary view. See *Vaughn* v. *Tate*, 64 Mo. 491; *Knight* v. *Elliott*, 57 Mo. 317.

Continuing, the Supreme Court of Indiana said: "The surveyor general was not required to, and did not, locate the half-quarter posts or line, and, having surveyed the quarter, established the lines and located the corners thereof, these defined irrevocably the boundaries or limits of the quarter; the purchasers and the Government acted upon the assumption that the lines were correctly measured and returned by the deputy surveyor; in this all were alike deceived; the length of lines is less than that so acted upon, and; by every principle of equity, the deficiency should be borne by the several tracts in proportion to the quantities so presumed to be contained therein at the time of the purchase." Kirby's Digest, § 1136 (referring to county surveyors), is as follows: "It shall be his duty, in subdividing any section or part of a section of land originally surveyed under the authority of the United States, to make his survey conformably to the original survey." The Revised Statutes of the United States, § 2395 *et seq.*, provide in substance that all corners marked in the surveys returned by the surveyor general shall be established as the proper corners of the sections or quarter sections, which they were intended to designate, and corners of half and quarter sections not marked shall be placed as

nearly as possible "equidistant from those corners which stand on the same line," and that these boundary lines as actually run and marked "shall be established as the proper boundary lines of the section, or subdivisions, for which they were intended, and the length of such lines, as returned by either of the surveyors aforesaid, shall be held and considered as the true length thereof." It follows that the original township, section and quarter-section corners, as surveyed and established by the Government surveyors, must stand as established. But, as to the division of quarter sections, there is no actual survey, and the quarter-quarter corners are placed on straight lines joining the section and quarter-section corners, and midway between them, except on the last half mile of section lines closing on the north and west boundaries of the township, or on other lines between fractional sections.

The land department of the United States has sent out the following rule to be observed in the subdivision of quarter sections into quarter-quarters: "Preliminary to the subdivision of quarter sections, the quarter-quarter corners will be established at points midway between the section and quarter-section corners and between quarter corners and the center of the section, except on the last half mile of the lines closing on the north or west boundaries of a township, where they should be placed at 20 chains proportionate measurement to the north or west of the quarter-section corner." Recognizing that there may be differences in the measurements, the following is added: "By proportionate measurement of a part of a line is meant a measurement having the same ratio to that recorded in the original field notes for that portion as the length of the whole line by actual resurvey bears to its length as given in the record." Restoration of lost or obliterated corners and subdivision of sections, revision of June 1, 1909, General Land Office, pp. 22 and 23.

It follows that the line established by the court below is not the true line; for it places the whole excess upon the land of appellees. The quarter-section corner on the west side of the section is fixed by the original survey as actually made, and must stand as the true corner. Hence the excess of three chains must fall on the western tier of lots extending from there

to the northwest corner of the section. The official plat shows that the distance from the quarter-section corner on the west side of the section to the northwest corner of the section is 90 chains, when by actual measurement it is 93 chains and 62 links. The official plat also shows that the west line of lot 18⁻ is 20 chains, and that of lot 11 immediately adjoining and north of it is 20 chains. By the rule announced above lot 11 is entitled to its proportionate part of this excess of three chains and 62 links. Therefore the decree will be reversed with directions to the chancellor to enter a decree in accordance with this opinion.