**OVERTON et al. v. LEONARD et al.**

No. 9700—Opinion Filed July 20, 1920.

Rehearing Denied Sept. 21, 1920.

(Syllabus by the Court.)

**1. Boundaries— Resurveys—Statutes Controlling.**

The county surveyor in making resurveys and in establishing lines between subdivisions of a section is governed by section 1711, Revised Laws 1910.

**2. Same—Apportionment of Discrepancies.**

The north half of section 4, township 16, north, range 15, Wagoner county, was subdivided by the official government geological survey into lots one, two, three, and four, but the lines between said lots were not established, and the owners of lot two petitioned the county surveyor of Wagoner county to establish the dividing line between lots one and two, and the county surveyor in making his resurvey was unable to find or locate the northeast or northwest corner of said section, and reported them as lost or obliterated corners, and proceeded to establish said corners, and in establishing the same the width of the section, as determined by him, was 5,326.4 feet, and in establishing the lines between the different lots established the lines making lot one 1,326.5 feet wide, lot two 1,326.8 feet wide, lot three 1,326.8 feet wide, and lot four 1,346.3 feet wide, doing so by using certain meandering corners established on said section along the Arkansas river. Held, error; that by virtue of section 1711, Revised Laws 1910, and sections 4804 and 4805, U. S. Compiled Statutes of 1916 (R. S. 2396, 2397), and the rules and regulations of the General Land Office in regard to re-establishing of subdivision lines, the county surveyor in locating the dividing lines between said lots should have divided the total width of the section by four and made each lot the same width, or a distance of 1,331.6 feet wide, and the dividing line between lots one and two should be established 1,331.6 feet west from the east line of said section.

Error from District Court, Wagoner County; Chas G. Watts, Judge.

Proceedings by B. V. Leonard and others for a resurveying of land boundaries. From report of surveyor, C. H. Overton and another, interested property owners, appealed to the district court, where report of surveyor was affirmed, and they bring error. Reversed and remanded.

E. G. McAdams and Biddison & Campbell, for plaintiffs in error.

A. L. Harris, for defendants in error.

McNEILL, J. This action arose by W. H. Harris and B. V. Leonard filing an application with the county surveyor of Wagoner county requesting the surveyor to establish the corner and dividing line between lot 2 and the north 9.49 acres of lot 1 in section 4, township 16 north, range 15, Wagoner county. Notice was given to W. B. Green, C. H. Overton, and Overeen Oil and Gas Company, the owners of the north 9.49 acres of lot 1, and other parties who were interested in said survey.

The county surveyor, after making his survey, filed his report as required by law. The material facts, as disclosed from the record, are: That the north boundary of the section in question was a standard parallel. The evidence disclosed that the northeast and northwest section corners were lost or obliterated and the surveyor established the northeast and northwest corners of section 4 and the east and west boundary lines of said section. The evidence disclosed that prior thereto the only official survey of said land was the government geological survey, and in making said survey the government did not establish any of the half or quarter section corners. A portion of the section is bounded on the north by the Arkansas river, and the government in running the meandering line along said river bank and across a portion of the north side of said section established two meander line corners. After determining and establishing the closing section corners, or the northeast and the northwest corners of said section four, the surveyor then located the dividing lines between lots one, two, three, and four.

The surveyor found the distance between the two closing section corners to be 5,326.4 feet. In establishing the lines between the lots he did so by making lot one 1,326.5 feet wide, lot two 1,326.8 feet wide, lot three 1,326.8 feet wide, and lot four 1,346.3 feet wide. In explaining how this was done, the surveyor said that he did so by using the meandering corners that were established along the bank of the Arkansas river, and made the subdivision of the section to correspond to them. From the report of said surveyor, the owners of 9.49 acres of land appealed to the district court, contending that, after establishing the section corners, the surveyor should have determined the line between each subdivision of the section by making each lot the same width, or by dividing the total distance by four, making each lot 1,331.6 feet wide.

Upon trial of the case to the district court, the court affirmed the report of the surveyor, and appeal has now been taken to this court from that part of the surveyor's report fixing the subdivision line between lots one and two, but not from the report locating the corners of the section.

In considering the appeal, C. H. Overton and Overeen Oil and Gas company will be referred to hereinafter as plaintiffs in error and Leonard and Harris as defendants in error. The contention of plaintiffs in error is that after the surveyor established the closing corners of section four, that is, the northeast and northwest corners, and made and determined the east and west lines, the law defined the way of ascertaining the boundary line between subdivisions of said section, to wit, to divide the total distance between the corners of the sections in equal parts, and by so doing the lots one, two, three, and four would all have been the same width, or 1.331.6 feet wide.

The law applicable to the case, section 1711, Revised Laws 1910, is as follows:

"The resurvey and subdivision of lands by county surveyors shall be according to the laws of the United States, and the instructions issued by the officers thereof in charge of the public land surveys, in all respects; and in the subdivision of fractional sections bounded on any side by a meandered lake or river, or the boundary of any reservation of irregular survey, the subdivision lines running toward and closing upon the same shall be run at courses in all points intermediate and equidistant, as near as may be, between the like section lines established by the original survey."

The regulations of the General Land Office in regard to the restoration of lost or obliterated corners, promulgated June 1, 1909, contain the following provision:

"The method now in practice, where regular conditions are found, requires section lines to be initiated at the corners of the south boundary of the township, and to close on existing corners on the east, north, and west boundaries of the township, except that when the north boundary is a base line or standard parallel, new corners are set therein, called closing corners."

The United States statutes that regulated the method for locating the half and quarter section corners are sections 4804, 4805. United States Compiled Statutes 1916 (sections 2396, 2397, Rev. Stat.), which read as follows:

Section 4804. "First. All the corners marked in the surveys, returned by the surveyor-general, shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line.

"Second. The boundary lines, actually run and marked in the surveys returned by the surveyor-general, shall be established as the proper boundary lines of the sections, or subdivisions for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be to the water course, Indian boundary line, or other external boundary of such fractional township.

"Third. Each section or subdivision of section, the contents whereof have been returned by the surveyor-general, shall be held and considered as containing the exact quantity expressed in such return, and the half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they may make part."

Section 4805. "In every case of the division of a quarter section the line for the division thereof shall run north and south, and the corners and contents of half quarter sections which may thereafter be sold, shall be ascertained in the mann r and on the principles directed and prescribed by the section preceding, and fractional sections containing one hundred and sixty acres or upwards shall in like manner as nearly as practicable be subdivided into half quarter sections, under such rules and regulations as may be prescribed by the Secretary of the Interior, and in every case of a division of a half quarter section, the line for the division thereof shall run east and west, and the corners and contents of quarter sections which may thereafter be sold shall be ascertained, as nearly as may be, in the manner, and on the principles, directed and prescribed by the section preceding; and fractional sections containing fewer or more than one hundred and sixty acres shall in like manner, as nearly as may be practicable, be subdivided into quarter sections. under such rules and regulations as may be prescribed by the Secretary of the Interior."

The regulation of the General Land Office in regard to the re-establishment of the quarter section corners on closing section lines between fractional sections contained the following provision:

"Re-establishment of quarter section corners on closing section lines between fractional sections. This class of corners must be re-established proportionately, according to the original measurement of 40 chains from the last interior section corner. If the whole measurem nt does not agree with the original survey, the excess or deficiency must be

divided proportionately between the two distances expressed in the field notes of original survey. The section corner started from and the corner closed upon should be connected by a right line, unless the retracement should develop the fact that the section line is either a broken or curved line, as is sometimes the case."

The surveyor locating the closing section corners found the distance between the corners to be 5,326.4 feet instead of 5,280 feet, or an excess of 46.4 feet. The question presented is, how should he divide the excess?

The rules and regulations of the General Land Office provide:

"If the whole measurement does not agree with the original survey, the excess or deficiency must be divided proportionately between the two distance s expressed in the field notes of the original survey."

In fixing the line or corner between the lots, the county surveyor should have followed the rules and regulations of the General Land Office and the statute of the United States, and this portion of the section being divided into lots, instead of half or quarter sections, he should make the width of the lots all the same.

The Supreme Court of the United States, in the case of St. Paul and Pac. R. Co. v. Schurmeier, 7 Wall. 272, 19 L. Ed. 74, says:

"Provision was made by the act of February 11, 1805, that townships should be subdivided into sections, by running straight lines, from the mile corners, marked as therein required, to the opposite corresponding corners, and by marking on each of the said lines intermediate corners, as nearly as possible equidistant from the corners of the sections on the same.' Corners thus marked in the surveys are to be regarded as the proper corners of sections, and the provision is, that the corners of half and quarter sections, not actually run and marked on the surveys, shall be placed, as nearly as possible, equidistant from the two corners standing on the same line. 2 Stat. at L. 313. Boundary lines, actually run and marked on the surveys returned, are made the proper boundary lines of the sections or subdivisions for which they were intended, and the second article of the 2d section provides, that the length of such lines, as returned, shall be held and considered as the true length thereof. Lines intended as boundaries, but which were not actually run and marked, must be ascertained by running straight lines from the established corners to the opposite corresponding corners; but where no such opposite corresponding corners have been, or can be fixed, the boundary lines are required to be ascertained by running from the established corners, due

north and south, or east and west, as the case may be, to the water course, Indian boundary line, or other external boundary of such fractional township.

"Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser."

Other cases following the same rule of reasoning are as follows: Jeffries v. Land Company, 134 U. S. 178, 33 L. Ed. 872; Ivy v. Parker (Ariz.) 163 Pac. 258; Tolson v. S W. Improvement Ass'n (Ark.) 133 S. W. 603; Brooks v. Stanley (Neb.) 92 N. W. 1013; Hootman v. Hootman (Iowa) 111 N. W. 61; Gerke v. Lucas (Iowa) 60 N. W. 538; Edinger v. Woodke (Mich.) 86 N.W. 397; Miller v. Topeka Land Co. (Kan.) 24 Pac. 420; McAlpine v. Reicheneker, 27 Kan. 257; Booth v. Clark (Wash.) 109 Pac. 905; Andrews v. Wheeler (Cal.) 103 Pac. 144; Pereles v. Magoon, 78 Wash. 27, 23 Am. St. Rep. 389. The surveyor, instead of following the statute, attempted to fix the dividing lines between the lots by the use of certain meander corners, established by the government. In this the surveyor was in error.

The defendants in error introduced over the objection of plaintiffs in error certain evidence of other surveyors, contending that the closing corners etsablished by the surveyor were not correctly located. This was not properly before the trial court, for the reason the portion of the findings of the survey establishing the corner was not appealed from by defendants nor the plaintiffs, nor did either side take any exception to that portion of the report of the surveyor fixing and establishing the corners.

The surveyor, after establishing the corners, used an improper method of locating the dividing line between the lots, and did not make the lots of equal width. This was error, and the district court committed error in not so modifying said report of the surveyor.

The judgment of the court will therefore be reversed and remanded, with instructions to the district court to modify the report of the surveyor and establish the subdivision lines by dividing this portion of the section into four equal parts; that is, the width of each lot to be the same, and the line between lots one and two is established at 1,331.6 feet west of the east line of said section.

RAINEY, C. J., and HARRISON, KANE, PITCHFORD, JOHNSON, and RAMSEY, JJ., concur.