### LUTHER *v.* WALKER.

#### Opinion delivered December 19, 1927.

1. BOUNDARIES—FIXED MONUMENTS.—In determining boundaries, fixed monuments are to be considered and to govern over courses and distances called for by the field-notes.

2. BOUNDARIES—DEFICIENCY IN ACREAGE OF SECTION—APPORTIONMENT.—Where the original government survey of a section was incorrect, in that field-notes showed the length of the southern line to be 92.50 chains, when the actual length was 75 chains, the deficiency in acreage should be apportioned between the southwest and the southeast quarter sections.

3. PUBLIC LANDS—RULES OF LAND DEPARTMENT.—Courts recognize the right of the Land Department of the United States Government to make rules for the direction and control of surveyors in establishing the lines of the original government survey.

Appeal from White Chancery Court; *W. P. Beard,* Special Chancellor; reversed.

*C. E. Yingling* and *A. W. Taylor,* for appellant.

*Mehaffy & Miller* and *Culbert L. Pearce,* for appellee.

SMITH, J.   Appellants are the owners of lots 6, 7, 9 and 10, in the southeast quarter of section 1, township 9 north, range 4 west, and brought this suit to recover possession of a house alleged to be located on lot 10 in that quarter section.   Appellee, Mrs. Denny, is the owner of the southwest quarter of this section, and insists that the house in question is on her land.   The question between these coterminous owners is therefore the location of the true line between these two quarter sections.

The field-notes of the original United States survey and the Government plat of section 1, township 9 north, range 4 west, was offered in evidence, and it appears

from these records that the southwest quarter contains 160 acres and that the southeast quarter is divided into four lots, numbered 6, 7, 9 and 10, each containing 40 acres, and a fifth lot, numbered 8, a parallelogram in shape, containing 46 acres, which last named lot lies along the east line of the section, which line is also the range line between ranges 3 west and 4 west. White River runs near the southeast corner of this section, and the testimony shows that, to such an extent as the river has changed its course since the original Government survey, which is very slight, the river has moved east, and not west.

The field-notes show the south line of this section to be 92.50 chains in length, while the undisputed testimony shows, according to four separate surveys thereof, that the actual length of the south line of the section is only 75 chains, and that the south line of the section, if run from the southwest corner thereof in accordance with the field-notes, for a distance of 92.50 chains, as called for by the field-notes, would not only run across the range line which divides section 1, township 9 north, range 4 west, from section 6, township 9 north, range 3 west, but would also extend across White River, no part of which stream, according to either the field-notes or the plat, is in section 1, township 9 north, range 4 west.

The southwest corner of the section was found, and exists as an established corner, and the northwest corner of the southwest quarter was also located and established, but neither the southeast corner of the southwest quarter nor the southeast corner of the section itself has ever been found. In fact, every survey of the south half of this section made since the original Government survey demonstrates the inaccuracy and falsity of the original field-notes and the plat thereof. These field-notes and the plat thereof show the course and distance of the interior lines dividing the southeast quarter into five lots, but the conclusion is inevitable that the survey as reported was never in fact made on the east and south lines. The location of the range lines and the river

makes it impossible for the field-notes to be correct, so that the southeast corner of the section, according to the field-notes, has never been found and is nonexistent in fact, yet this corner must be placed in the range line, because that line forms the boundary of section 1, township 9 north, range 4 west, on the west, and section 6, township 9 north, range 3 west, on the east. This southeast corner of the section must be in the range line, because it cannot be anywhere else, yet the field-notes show the length of the south line of section 1 to be 92.50 chains, whereas every survey shows the actual length of this south line to be only 75 chains. We have therefore the case of an incorrect original Government survey, resulting in the loss of the southeast corner of the southwest quarter of the section and the southeast corner of the section itself.

A witness named Shelton, who was a farm laborer, and who did not profess to know anything about the field-notes, testified that he was present when the south line of the southwest quarter of the section was surveyed, and assisted the surveyor, whose name he did not remember, in making the survey. He testified that the southwest corner of the section was found and marked, a fact about which none of the witnesses differ, as the location of that corner has been definitely and accurately established. He also testified that the surveyor ran the south line of the southwest quarter, and rocks were placed at the southeast corner of the quarter section according to that survey. He admitted, however, that the southeast corner of the section was not found, and that that corner would be in, or across, the river. According to the testimony of this witness, the southeast corner of the southwest quarter, as thus located, would place the house in question on appellee's land, and would give her the strip of land here in question.

We attach no importance, however, to the testimony of this witness. He did not testify that the southeast corner of the southwest quarter was located, or that any

witness trees or other monuments were found showing
that corner. The surveyor did not find this quarter sec-
tion corner; he merely located a corner, and this was evi
dently done by surveying on the course indicated by the
field-notes for a distance of 40 chains from the southwest
corner of the section. If the field-notes were correct,
such a survey would have located the southeast corner
of the southwest quarter, but the section cannot be sur-
veyed according to the field-notes, because the superficial
area does not exist for which the field-notes call.

It was adjudged, in the decree from which this appeal
comes, that appellee, Mrs. Denny, "is the owner of the
southwest quarter of section one, township nine north,
range 4 west, and that the east line of said southwest
quarter should be and the same is hereby established as
being a line running due north from a point on the south
line of said section one, 40 chains east of the southwest
corner of said section one as established by the United
States Government surveyor, so as to give 160 acres of
land in the said southwest quarter of said section; and
that the title to said quarter section as herein established
be and the same is hereby quieted and confirmed" in
appellee, Mrs. Denny.

It is, of course, obvious that, in establishing the east
line of the southwest quarter so as to give that quarter
section 160 acres, a proportionate quantity of land was
taken from the four lots owned by appellants in the south-
east quarter, which lots, according to the field-notes and
the Government plat, also contained 160 acres. It is also
obvious that if, after thus establishing the east line of the
southwest  quarter by measuring 40 chains from the
southwest corner of the section, a similar method was
employed to establish the east line of the four lots owned
by appellants, by extending the south line of the section
40 chains further, in accordance with the field-notes, lot
numbered 8 would cease to exist, and the south line of
the four lots, taking no account of lot 8, which is east of
them, would extend five chains beyond the range line.

as it is only 75 chains from the southwest corner of the section to the range line. This, of course, could not be done, as the boundary line of the section could, in no event, extend beyond the range line of the township in which the section is located.

Authority for the court's action is asserted under § 57 of Clark on Surveying and Boundaries, which reads as follows:

"As to the proper manner of placing the deficiency in a fractional section the courts hold, in sections having less than the full number of acres, where the quarter section corner cannot be found, the deficiency will not be divided between the quarter sections but must fall on the quarter directly on the township or range line."

The author cites in support of the text quoted the case of *Vaughan* v. *Tate,* 64 Mo. 491, and that case alone. The doctrine of that case was expressly repudiated by this court in the case of *Tolson* v. *Southwestern Imp. Assn.,* 97 Ark. 193, 133 S. W. 603.

Before discussing the last mentioned case it may be said that the statute (§ 1891, C. & M. Digest) provides that it shall be the duty of a surveyor, "in subdividing any section or part of a section of land originally surveyed under the authority of the United States, to make his survey conformably to the original survey," and the Tolson case followed this statute by holding that, where the official government survey established the section and quarter section corners, such corners will stand, though erroneous. But, as we have said, we have here a case where the southeast corner of the southwest quarter and the southeast corner of the section itself have not been and cannot be found. The facts here recited warrant the statement that these corners were never actually located by the government surveyor. Indeed, it is not too much to say that the survey is a false one, and was never made except on paper.

Under the rule that fixed monuments must govern, the south line of section 1 begins at the southwest corner

of that section, an ascertained point, as that corner was found, and it must end in the range line, another fixed point, and the distance between these two points is 75 chains, or 4,950 feet, whereas the field-notes show the length of this south line to be 92.50 chains, or 6,105 feet, a discrepancy of 17.50 chains, or 1,155 feet. A difference so great in the survey of a line so short—considerably less than a mile—is strong evidence that the survey was never made, except on paper. Notwithstanding this fact, under the rules of surveying prescribed by the Gov-ernment Land Department, this survey would govern the location of the lines of the coterminous owners if the cor-ners established by that survey could be found. This is true because fixed monuments are to be considered and govern over courses and distances called for by the field-notes. *Meyer v. Board of Imp. Paving Dist. No. 3,* 148 Ark. 623, 231 S. W. 12.

But it must be borne in mind that the only corners which have ever been located in the survey of the south half of this section are the southwest corner of the sec-tion and the northwest corner of the southwest quarter. The other corners cannot be found, nor can they be located by the field-notes, which are demonstrably and admittedly incorrect. These other corners are therefore lost and obliterated corners. Under these circumstances, should the deficiency in the acreage, which results from the error we have here several times stated, fall entirely upon the southeast quarter of the section, or should the deficiency be apportioned between the two quarter sections and each share proportionately in the loss?

The question stated was covered by a quotation from 5 Cyc. 974, quoted with approval in the note in the case of *Tolson v. Southwestern Imp. Assn., supra,* as follows:

" 'In the case of government sections, interior lines in the extreme northern or western tiers of quarter sec-tions, containing either more or less than the regular quantity, are to be 20 chains wide, and the excess or deficiency of measurement is always to be thrown on the

exterior lots; elsewhere the assumed subdivisional cor-
ner will always be a point equidistant from the estab-
lished corners. This rule, however, has no application
where the original surveys are found to be erroneous, in
which case the excess or deficiency is to be apportioned
to each subdivision within the boundaries where the cor-
ners are lost.' "

After approving the above quotation, this court pro-
ceeded to say:

"In the case of *Caylor* v. *Luzadder,* 137 Ind. 319, 45
Am. St. Rep. 183, 36 N. E. 909, the court recognized the
general rule, but said: 'There seems to be a well recog-
nized distinction between this rule as applied to original
surveys, whether in the making of such surveys or in
allotting the deficiency or overplus, when the correctness
of such surveys is not questioned, and that where such
original surveys are found to have been erroneous or the
original corners and lines are wholly lost.'

"The following authorities which we have examined
are cited as recognizing the distinction: *Bailey* v. *Cham-
blin,* 20 Ind. 33; *Jones* v. *Kimble,* 19 Wis.. 452 (429);
*Moreland* v. *Page,* 2 Clarke (2 Iowa) 139; *Westphal* v.
*Schultz,* 48 Wis. 75, 4 N. W. 136; *James* v. *Drew,* 68 Miss.
518, 24 Am. St. Rep. 287.

"The Supreme Court of Missouri has taken the con-
trary view. See *Vaughan* v. *Tate,* 64 Mo. 491; *Knight*
v. *Elliott,* 57 Mo. 317."

After thus disapproving the doctrine of the Missouri
case, upon which the text quoted from Clark on Survey-
ing and Boundaries was based, this court proceeded fur-
ther to say:

"Continuing, the Supreme Court of Indiana said:
'The Surveyor-General was not required to, and did not,
locate the half-quarter posts or line, and, having surveyed
the quarter, established the lines and located the corners
thereof, these defined irrevocably the boundaries or limits
of the quarter; the purchasers and the Government acted
upon the assumption that the lines were correctly meas-

ured and returned by the deputy surveyor; in this all were alike deceived; the length of lines is less than that so acted upon, and, by every principle of equity, the deficiency should be borne by the several tracts in proportion to the quantities so presumed to be contained therein at the time of the purchase.' ''

In that case, as in this, there were no corners which served as fixed monuments which would govern, notwithstanding errors as to course and distance, and in that case, as in this, the field-notes were demonstrably erroneous, but, unlike the present case, there was in that case an excess instead of a deficiency as exists here.

In applying the rules there announced and here quoted the court said:

''The official plat shows that the distance from the quarter section corner on the west side of the section to the northwest corner of the section is 90 chains, when by actual measurement it is 93 chains and 62 links. The official plat also shows that the west line of lot 18 is 20 chains, and that of lot 11, immediately adjoining and north of it, is 20 chains. By the rule announced above, lot 11 is entitled to its proportionate part of this excess of 3 chains and 62 links.''

All the courts everywhere have always recognized the right of the Land Department of the United States Government to make rules for the direction and control of surveyors in establishing the lines of the original government survey, and we quote §§ 59 and 60 of the rules and regulations issued by the United States Government General Land Office, in a pamphlet entitled ''Restoration of Lost or Obliterated Corners and Subdivisions of Sections, Revision of June 1, 1909:

''Section 59. Re-establishment of quarter-section corners on closing section lines between fractional sections. This class of corners must be re-established proportionately, according to the original measurement of 40 chains from the last interior section corner. If the whole measurement does not agree with the original survey, the excess or deficiency must be divided propor-

tionately between the two distances expressed in the field-notes of the original survey. The section started from and the corner closed upon should be connected by a right line, unless the retracement should develop the fact that the section line is either a broken or a curved line, as is sometimes the case.

"Section 60. Re-establishment of interior quarter section corners. In some of the older surveys these corners are placed at variable distances, in which case the field-notes of the original survey must be consulted, and the quarter-section corner re-established at proportionate distances between the corresponding section corners in accordance therewith. The latter surveys being more uniform and in stricter accordance with law, the missing quarter-section corner must be re-established equidistant between the section corner making the line, according to the field-notes of the original survey. The remarks made under § 56, in relation to section lines, apply with full force here also; the caution there given, not to neglect sight trees, is equally applicable, since the proper establishment of the quarter-section corner may in some instances very largely depend upon its observance, and avoid one of the many sources of litigation."

The case of *Tolson* v. *Southwestern Imp. Assn.*, *supra*, defines what is meant by proportionate measurement by quoting from pages 22 and 23 of a Government pamphlet on the "Restoration of Lost or Obliterated Corners and Subdivisions of Sections," above referred to, as follows: " 'By proportionate measurement of a part of a line is meant a measurement having the same ratio to that recorded in the original field-notes for that portion as the length of the whole line by actual resurvey bears to its length as given in the record.' "

The case of *Tolson* v. *Southwestern Imp. Assn.*, *supra*, is cited in an extensive note to the case of *Booth* v. *Clark*, Ann. Cas. 1912A 1272, 59 Wash. 229, 109 Pac. 805, where a large number of other cases are also cited, and the annotator's note states the general rule as follows:

"It is a general and well established rule that, where a tract of land is divided into smaller tracts or lots, the title to which becomes vested in different persons, none of the grantees is entitled to any preference over the others on the discovery of an excess or deficiency in the quantity of the land contained in the larger tract, and the excess must be divided among, or the deficiency must be borne by, all of the smaller tracts or lots in proportion to their areas."

In vol. 8 Century Digest, § 278 of the chapter on Boundaries, a number of cases which have construed the rules and regulations of the Land Department for the location of the lines of an original Government survey are cited, and the following rule is deduced, which is based upon the authority of decisions of the Supreme Courts of Iowa, Kansas and Wisconsin there cited:

"Section 278. In general. On a line of the same survey, and between remote corners, the whole length of which is found to be variant from the length called for, it is not to be presumed that the variance was caused from a defective survey in any part, but it must be presumed, in the absence of circumstances showing the contrary, that it arose from imperfect measurement of the whole line; and such variance must be distributed between the several subdivisions of the line, in proportion to their respective lengths."

So here it must not be presumed that the error in the Government survey of the south line of section 1 was made in surveying the south line of the southeast quarter, but it must be presumed, in the absence of any circumstances showing the contrary, that the error arose from an imperfect measurement of the entire south line of the section, and the deficiency must therefore be distributed between the various subdivisions of the line in proportion to their respective lengths.

The decree of the court below is therefore reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion.

MEHAFFY, J., dissents.