CULVER *v*. GILLIAN.

## Opinion delivered October 15, 1923.

1. ADVERSE POSSESSION—POSSESSION WITHOUT COLOR · OF TITLE.—
   Where no color of title is claimed, adverse possession is limited
   to the land actually occupied.

2. ADVERSE POSSESSION—CHARACTER OF POSSESSION.—While, to con-
   stitute adverse possession in one having no color of title, there
   need not be a fence or building, yet there must be such visible
   and notorious acts of ownership exercised over the premises
   continuously for the time limited by the statute that the owner of
   the paper title would have knowledge of the fact, or that his
   knowledge may be presumed as a fact.

3. ADVERSE POSSESSION—NOTICE OF HOSTILE CLAIM.—To constitute
   adverse possession of uninclosed and unimproved lots, there must
   be actual continuous possession by the claimant of such
   unequivocal character as to reasonably indicate to the owner
   that the claimant was making a hostile claim to the lots.

4. ADVERSE POSSESSION—SUFFICIENCY OF ACTS OF POSSESSION.—Proof
   that one claiming uninclosed and unimproved land put up a
   sign forbidding trespassers from coming there, that at one time
   he had the underbrush cleared and some of the larger trees
   cut down, that one year he planted some garden seed, that
   within the statutory period he inclosed and rented a part of
   the land, is insufficient to establish adverse possession.

5. TAXATION—PRESUMPTION AS TO TAX TITLE.—A donation deed from ·
   the State conveying land forfeited for taxes is *prima facie* evi-
   dence of title, and vests in the grantee constructive possession
   in case of wild and uninclosed land; and this possession is
   actual for all the purposes of remedy until it is interrupted by
   actual entry and possession taken by another.

6. ADVERSE POSSESSION—INVALID TAX DEED AS COLOR OF TITLE.—An
   invalid tax deed, being color of title, is competent evidence to
   mark the boundaries and extent of the purchaser's possession.

Appeal from Crawford Circuit Court; *James Coch-*
ran, Judge; affirmed.

### STATEMENT OF FACTS.

This is an action of ejectment brought by Gus Gillian
in the circuit court against C. L. Culver, to obtain pos-
session of certain lots in the city of Van Buren, Arkansas.
The defendant asserted title in himself by adverse
possession, and also claimed that the plaintiff could not

maintain his action because he claimed title under a void tax deed.

Gus Gillian claimed title to the five lots in controversy by mesne conveyances from the State of Arkansas.

It appears from the record that the lots were forfeited to the State for the nonpayment of taxes in 1900. On the 26th day of January, 1910, the Commissioner of State Lands executed a deed to said lots to W. V. Boatright, upon the payment of the taxes, penalties, and costs, for which the lands were forfeited, as provided by the statute. On the 7th day of December, 1912, W. V. Boatright and wife conveyed the lots by deed to Rachel Lindstrom. On the 10th day of March, 1919, Rachel Lindstrom conveyed the lots by deed to the plaintiff, Gus Gillian. Gillian and his grantors never entered into actual possession of the lots, but paid the taxes on the same.

The case was tried at the November, 1922, term of the circuit court.

C. L. Culver was a witness for himself. According to his testimony, the lots were situated near his residence, and were used by the public as a dumping ground for dead animals. He could not get the public authorities to stop using the lots for that purpose, and he posted a sign on the lots in 1907, forbidding trespassing on the lots. He also had the undergrowth and some of the larger timber cut down. He then planted some butternut trees and some vines to grow upon the large trees. He also planted some pumpkin seeds one year. In 1917 he inclosed a part of the lots with a fence. During the past three years Culver rented out the lots and collected the rent.

The county and probate clerk of Crawford County was also a witness for the defendant. According to his testimony, which was not objected to, the assessor's tax-books showed that the lots in question were assessed in gross in 1900. The record of the tax sale on the lots shows that they were sold together for the taxes, penal-

ties, and costs to the State of Arkansas, for the non-payment of the taxes.

The jury returned a verdict for the plaintiff, and from the judgment the defendant has duly prosecuted an appeal to this court.

*Chew & Ford,* for appellant.

Both the assessment of the lots, and the sale thereof, were *en masse,* and were illegal and void. C. & M. Digest §§ 9928 and 10086. The deed therefore from the State Land Commissioner to Boatright is void. Appellee has no title to support an action in ejectment. 61 Ark. 414, and cases cited; 138 Ark. 94. Appellee therefore cannot complain that appellant showed no title in himself. 55 Ark. 213; 107 Ark. 373; 122 Ark. 374.

*G. L. Grant* and *E. L. Matlock,* for appellee.

1. The deed from the State to Boatright is not void on its face. Even a void tax deed may be color of title. 60 Ark. 499. A donation deed executed by the State is *prima facie* evidence of title, and vests in the grantee constructive possession in the case of unoccupied land; and this possession is actual for all purposes of remedy until interrupted by actual entry and adverse possession taken by another. 76 Ark. 551; 69 Ark. 420; 74 Ark. 383.

2. To suppport the claim of adverse possession without color of title, it must be shown by the party asserting it that he had actual adverse, open and exclusive possession for the statutory period. 30 Ark. 656. Appellant's testimony fails to establish such possession.

HART, J., (after stating the facts). One of the defenses to the suit is that the defendant has title to the lots in question by adverse possession. It will be observed that he does not claim to have entered into possession of the lots under color of title. In cases of adverse possession under color of title the actual possession, by presumption of law, is constructively extended to the limits defined in the paper conveyance which gives color of title. In the case, however, of adverse posses-

sion without color of title, the adverse possession is limited to the land actually adversely occupied.

Here the defendant does not claim adverse occupancy under color of title.

While, in such cases, to constitute an adverse possession, there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised over the premises continuously, for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or that his knowledge may be presumed as a fact. In other words, it has been well said that if the claimant "raises his flag and keeps it up," continuously for the statutory period of time, knowledge of his hostile claim of title may be inferred as a matter of fact.

In the present case it may be said that, under the circumstances shown by the defendant himself, there has been no actual, visible, hostile appropriation of the lots, to the exclusion of the owner of the paper title, continuously for seven years. The lots were uninclosed and unimproved. There was no actual continuous use of the lots by the defendant of such unequivocal character as to reasonably indicate to the owner that the defendant was making a hostile claim to the lots. *Norwood* v. *Mayo,* 153 Ark. 620.

The defendant claims to have gone into possession of the lots in 1907 and to have held adverse possession ever since. He describes his adverse possession, however, and it is not of such a substantial character as to give him title to the lots. At one time he had the underbrush cleared and some of the larger trees cut down. One year he planted and cultivated a few garden seed. He did nothing from that time until the suit was brought, except that, in 1917, a part of the lots were inclosed and rented. It is true that, in the beginning, he put up a sign on the lots forbidding trespassers from coming there. This of itself would not be sufficient to show adverse possession of the lots against the true owner. It is not even

shown that the sign remained posted up continuously for seven years. Therefore we hold that, under his own testimony, the defendant did not acquire title to the lots by adverse possession.

Another ground of defense relied on for the reversal of the judgment is that it appears from the record that the five lots were assessed for taxes and sold *en masse* for a lump sum, and that the case is thus brought within the rule announced in *Campbell* v. *Sanders,* 138 Ark. 94. This would be true if the tax deed showed on its face that it was void. This would be in application of the well-known rule that the plaintiff in an ejectment case must recover upon the strength of his own title and not upon the weakness of that of his adversary. It does not appear from the record, however, that the tax deed in question is void on its face. *Prima facie* it conveyed a good title from the State to one of the grantors of the plaintiff. An invalid tax deed is color of title, and, as such, is competent evidence to mark the boundaries and extent of the purchaser's possession. This court has expressly held that a donation deed executed by the State of Arkansas is *prima facie* evidence of title, and vests in the grantee constructive possession in the case of wild land; and that this possession is actual for all the purposes of remedy until it is interrupted by an actual entry and adverse possession taken by another. *Thornton* v. *St. Louis Refrigerator & W. G. Co.,* 69 Ark. 424.

As we have already seen, the defendant acquired no title whatever to the lots by adverse possession. He made no claim under a paper title. Therefore, if the plaintiff had a *prima facie* title, he might recover possession of the lots on it, and the defendant, being a trespasser, is in no attitude to resist his claim.

It follows that the judgment will be affirmed.