DAVIS *v.* STRONG.

4-7452                                              186 S. W. 2d 776

Opinion delivered March 5, 1945.

*J. K. Mahony, H. S. Yocum, Emon A. Mahony* and
*C. W. Wright,* for appellant.

*Surrey E. Gilliam,* for appellee.

SMITH, J. This appeal involves the title and the right
to the possession of a strip of land, in form a parallelo-
gram, described as "30 feet off the west side of lot 10,
in block 3, McKissacks Addition to the town of Waldo,
Arkansas."

All parties deraign title from B. A. Page who, in
1888, executed a deed to R. N. Melton which attempts to
describe by metes and bounds a parcel of land extending
north and south 300 feet and east and west 93 feet, and
whose north and south boundary lines extend to the sec-
tion line between sections 16 and 17, township 16 south,
range 21 west.

There are several errors in the description employed.
One is that the description reads, "Commencing 440 feet
from the northeast corner of lot 6, block 9 of the original
survey of the town of Waldo, thence south 300 feet
. . . etc." It will be observed that the description
employed does not designate the direction from the north-
east corner of lot 6, where the lot begins, from which its
boundary runs, but it must have been east of the corner
of lot 6, otherwise it could never have reached the section
line referred to which was east of the point of beginning.
Another error was that the land conveyed was described
as being in lot 5, when in fact, it was a part of lot 10.
Another error is that a line running east 440 feet from
the northeast corner of lot 6, block 9 would not extend to
the section line. The deed evidently intended to describe
a parcel of land extending north and south 300 feet and

east and west 93 feet, whose east boundary line was the section line between sections 16 and 17, which is, of course, a fixed line, and in determining a boundary fixed monuments are to be considered and govern over courses and directions called for by field notes of a survey, or the descriptions employed in the deed. *Luther* v. *Walker,* 175 Ark. 846, 1 S. W. 2d 6.

On July 1, 1893, Melton and wife conveyed to W. E. Dickson a parcel of land extending 300 feet north and south, and 30 feet east and west, which, like the deed from Page to Melton, was described as commencing 440 feet from the northeast corner of lot 6, in block 9 of the original survey of the town of Waldo, and thence south 300 feet, etc. The lot conveyed was further described as "Being a part of lot 10, block 3 in McKissacks' Addition to the town of Waldo . . ."

This deed repeats the error as to distance from the northeast corner, lot 6, block 9, which appeared in the deed from Page to Melton, but we think it obvious that Melton was attempting to convey to Dickson 30 feet of the 93 feet conveyed to him by Page.

Dickson had acquired in 1888, prior to the execution of the deed from Melton to him, the title to the east 60 feet of lot 9, which lot 9 adjoins and is west of lot 10, and appellees and their ancestors have occupied this 60-foot lot as their homestead continuously since 1888.

After acquiring title to this 60-foot lot, the Dicksons made use of a part of lot 10, driving to and from their property. Melton objected to this use of his property, but proposed to sell the 30-foot strip here in controversy, and for the consideration of $30 executed the deed above referred to, to W. E. Dickson, which described the lot as commencing 440 feet from the northeast corner of lot 6, block 9, etc., when it should have read 480.5 feet from that corner.

If this deed from Melton to Dickson conveyed anything, it could only have conveyed 30 feet off the west side of lot 10, as the Dicksons already owned the 60 feet adjoining lot 10, and while the deed erroneously places

the point of beginning 440 feet from the northeast corner of lot 6, instead of 480.5 feet from the corner, as it should have done, it nevertheless further described the 30 feet conveyed as ''Being a part of lot 10, block 3 in McKissacks' Addition to the town of Waldo . . .,'' and the Dicksons occupied this lot without objection until after the death of Melton.

The appellees here, who were the plaintiffs below, claimed title to this 30-foot parcel of land under the will of W. E. Dickson and under the will of Ella Dickson, his wife, their mother, which wills were duly probated. They also claimed title by adverse possession for many years, as will later be more fully stated.

Appellants, defendants below, claimed title through W. S. Skinner and wife. Mrs. Skinner was the daughter and sole heir at law of Melton. The Skinners conveyed a parcel of land to H. M. Kitchens on January 6, 1920, whose boundary line was described as commencing 440 feet from the northeast corner of lot 6, block 9, as did the deeds from Page to Melton and from Melton to Dickson, and extending 93 feet to the section line.

Kitchen conveyed to J. W. Rhea, who conveyed to G. A. Davis, under the same description. After discovering the error in this description, Davis obtained a quitclaim deed from Kitchens and Rhea, dated March 22, 1939, correctly describing a parcel of land 93 feet wide, and extending to the section line.

In 1912, the Skinners erected a fence enclosing the 30-foot strip of land here in controversy, with the remaining 63-foot strip of land adjacent to the section line. It appears a controversy arose over this action, but when the Dicksons exhibited a deed from Mrs. Skinner's father, the fence was removed. It is contended that this action established a boundary line by agreement.

In 1940, Davis extended the fence along the north line of lot 10 to enclose as a part of his premises, the 30-foot strip in controversy, and soon thereafter this suit was filed by appellees, who owned the Dickson title, to compel the removal of this fence. Appellees prayed also

that the deeds under which they claim be reformed to correctly describe the land intended to be conveyed, and that the deeds under which the defendant Davis claims be cancelled insofar as they purported to convey the 30-foot strip, in controversy. After many records had been introduced and much testimony had been heard, the court found the facts to be that appellees had acquired title to the 30-foot strip by adverse possession, and from that decree is this appeal.

Before the final submission of the case, Davis had filed pleadings making Kitchens and Rhea cross-defendants, in which he prayed judgment under the covenants of warranty in the deeds through which he claims title, if it were found that he did not have title. This part of the lawsuit was not disposed of in the decree, and the cause was continued for further hearing on that issue.

Appellees insist that the decree should be affirmed by reason of their adverse possession, for much longer than seven years, before their possession was disturbed, and also under the agreement fixing the boundary line. Finding, as we do, that the testimony sustains the first contention, we do not consider the second one.

Appellants insist that this finding cannot be sustained for the reason that there was no such possession as marked the boundary of the land claimed to have been adversely held, and cases are cited which impose that requirement, where possession was unaccompanied by color of title.

We think, however, that the testimony meets the requirement of the law in this respect. It may first be said the tax receipts were exhibited showing payment of taxes continuously and without a break, in the name of W. E. Dickson estate on a part of lot 10, block 3, since 1897, the description usually being "Pt." "part" of "west part." From 1929 to 1942, both inclusive, taxes were paid under the description "30 feet W part lot 10, block 3." No taxes were ever paid on the land by Skinner, Kitchens. Rhea or appellant Davis.

The testimony shows that appellees used this strip of land as a driveway into their property, of which the 60-foot lot, to which their title is not questioned, was a part, and that they placed gravel on the entrance to their driveway when the Magnolia Road, running in front of lots 9 and 10, was improved. This date is not definitely shown, but was more than 7 years before Davis built the fence across the driveway.

A number of neighbors who had known this property for many years, and for much longer than seven years before the erection of the fence, testified that the Dicksons and appellees had made every use of this 30-foot strip for which it was desirable or susceptible. This testimony, as found by the court below, not only clearly preponderates, but is practically undisputed. It was shown that on the 30-foot strip appellees not only had a driveway, which they used when occasion required, but they also had two buildings, one a dairy barn, and the other a poultry house, and in another portion they had a flower garden. It was shown also that for a period of many years, and much longer than seven years, appellees marked the boundary of the 30-foot strip by raking and clearing it, and mowing the grass and weeds thereon, to the east edge thereof, leaving the remaining part of lot 10 with the grass growing high, and the brush and leaves not raked therefrom, so as to include this strip as a part of their yard, and many neighbors testified that this 30-foot strip appeared to be, and was regarded as a part of appellees' premises.

We think the principles announced in the case of *Culver* v. *Gillian*, 160 Ark. 397, 254 S. W. 681, control here. It was there held that where no color of title is claimed, adverse possession is limited to the land actually occupied, but to constitute adverse possession in one having no color of title, there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised over the premises continuously for the time limited by law that the owner of the paper title would have knowledge of the fact, or that his knowledge would be presumed as a fact.

The Dicksons bought this property to enlarge their premises and to have enclosed it with a fence would have defeated that purpose, but their flag of ownership was raised when they proceeded, for many years, to make all uses of it to which it was susceptible.

In 1920, Dickson and his wife executed a mortgage on their home, which specifically and sufficiently embraced this 30-foot strip, and recited that the mortgagors were in possession of the mortgaged property. Another mortgage was given in 1921 and again in 1922, and these mortgages were duly recorded. Appellant Davis obtained his deed in 1920, and while he might not have known that appellees were paying the taxes on the 30-foot strip, he knew he was not paying them, and must have also known what all the neighbors knew: that appellees were making all use of the land which any lawful owner might or could have made.

We conclude, therefore, that the court properly held that appellees acquired title by adverse possession, if it had not otherwise been acquired, and the decree is, therefore, affirmed.

McFADDIN, J., disqualified and not participating.