BAUGHMAN *v.* FORESEE.

4-8071                                    199 S. W. 2d 596

Opinion delivered February 17, 1947.

*Len Jones,* for appellant.

*John H. Shouse* and *J. Loyd Shouse,* for appellee.

Minor W. Millwee, Justice.   Appellee, L. B. Foresee, purchased a farm in Boone county, Arkansas, from W. T. Whitley in October, 1935.  The farm was described as a 40 acre tract and was inclosed by a wire fence which had been erected at least 20 years prior to the purchase by appellee.  Appellee went into immediate possession following his purchase and has continued to cultivate the lands up to the fence each year since.

In the spring of 1945, appellant, Lewis Baughman, informed appellee that he had purchased lands adjacent to appellee's farm and was claiming title to a part of the lands inclosed in appellee's fence.  Appellee employed Doss Young to harvest his hay crop in 1945, but appellant advised Young to refrain from cutting hay on that part of the inclosure which appellant claimed until a survey was made and the property lines settled.

On August 6, 1945, appellee filed this suit in the Boone Chancery Court alleging his ownership of the inclosed lands and that appellant was threatening to remove his fences and reëstablish the lines upon appellee's land; and that appellee and those under whom he claimed title had been in adverse possession of the lands for more than 20 years.  The prayer of the complaint was that appellant be restrained from removing appellee's fences or interfering in any manner with appellee's quiet and peaceable enjoyment of the property, and for all equitable relief.

Appellant filed an answer and cross-complaint denying that appellee had adverse possession of the lands and alleging that appellee had a part of appellant's land inclosed within his fences well knowing that the land belonged to appellant; and that appellant and those under whom he claimed had paid taxes on the land for more than seven years.  The prayer of the answer was that the court establish the true lines between the parties and that the complaint be dismissed.

After a hearing held on September 14, 1945, the case was taken under advisement by the trial court until

March 4, 1946, when a decree was entered which found that appellee had acquired title to the lands within his fence by adverse possession. Appellant was permanently enjoined from interfering with appellee's possession of the inclosed lands and title thereto was quieted in appellee.

The evidence discloses that the wire fence which inclosed the farm purchased by appellee in 1935 also inclosed some land lying in adjoining 40 acre tracts. Although no survey was made and none of the witnesses knew the exact location of the land lines, it was variously estimated that from 10 to 25 acres of adjoining forties were inclosed within appellee's fence. This fence was constructed at least 10 years prior to 1935 and replaced a rail fence which stood on substantially the same lines for 20 years prior to the erection of the wire fence. It is undisputed that appellee and former owners of the 40 acre tract which he purchased had cultivated the lands up to the fence lines. All the witnesses knew that appellee was cultivating all the land within his fence, but some of them did not know that he was claiming title to that part of the inclosure which encroached upon the adjacent lands.

Appellant, in February, 1945, made a contract with a nonresident owner to purchase lands adjoining appellee's farm. He had not received a deed at the time of the trial, but exhibited tax receipts issued to the nonresident owner in payment of the taxes for the years 1936 to 1944, inclusive, on two adjoining 40 acre tracts. Although he knew that appellee had part of these lands inclosed within his fence, he made no inquiry as to the nature of appellee's claim to the lands until after he contracted to purchase the lands from the nonresident owner. Appellant testified that he talked with appellee about having the lands surveyed after he contracted to purchase the adjoining lands and that appellee offered to buy any lands within his fence that belonged to appellant. It is contended by appellant that this offer to purchase amounted to a recognition of appellant's title to the lands in dispute

and precludes appellee from claiming title thereto by adverse possession.

It is true that the offer to purchase, which was neither admitted nor denied by appellee, was to some extent a recognition of appellant's claim of title to the disputed lands, but at the time it was made appellee had already been in possession of the lands for 10 years. Our cases make a distinction between a recognition of title in another by an adverse claimant made during the statutory period of seven years and one that is made after the statutory period has run. An offer to purchase made after the seven year period has elapsed may be considered by the court or jury in determining the character of the possession of a claimant during the statutory period, but such offer will not have the effect of divesting a title that has already become vested in the adverse claimant. Evidence of an offer to purchase by an adverse claimant made after the statutory period elapsed was involved in *Shirey* v. *Whitlow*, 80 Ark. 444, 97 S. W. 444. Justice RIDDICK, speaking for the court, there said: "While it was proper for the jury to consider this evidence in determining the nature of the defendant's possession, whether adverse or not, the fact that he had to some extent recognized the title of the defendant after the statutory period had elapsed is not conclusive against him, for, not being a lawyer, he might have done so in ignorance of the fact that adverse possession for over seven years gave him title, or he might have made the offer to purchase, not in recognition of plaintiff's title, but in order to buy his peace and avoid litigation." This rule has been approved in many of our later cases. Some of these were cited with approval in *Hart* v. *Sternberg*, 205 Ark. 929, 171 S. W. 2d 475.

While it was proper for the chancellor to consider the offer to purchase in connection with the other evidence in determining whether appellee actually held the lands adversely, the offer did not necessarily amount to such recognition of title in appellant as to revest the title already acquired by adverse possession.

Appellant also insists that the evidence is insufficient to show that appellee had notorious possession of the lands in controversy and the case of *Terral* v. *Brooks*, 194 Ark. 311, 108 S. W. 2d 489, is cited in support of this contention. There, this court approved general statements of the rule laid down in 2 C. J. S., Adverse Possession, § 45, as follows: "Notorious possession contemplates possession that is so conspicuous that it is generally known and talked of by the public or the people in the neighborhood . . . The true owner must have knowledge or notice that the possession is hostile; and this may and must consist either of actual knowledge or of constructive notice arising from the openness and notoriety of the possession. . . . Possession which is so open, visible, and notorious as to give the owner constructive notice of an adverse claim need not be manifested in any particular manner; but there must be such physical evidence thereof as reasonably to indicate to the owner, if he visits the premises and is a man of ordinary prudence, that a claim of ownership adverse to his is being asserted."

The case of *Culver* v. *Gillian*, 160 Ark. 397, 254 S. W. 681, involved the claim of title by adverse possession where the claimant was without color of title. The court there said: "While, in such cases, to constitute an adverse possession, there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised over the premises continuously, for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or that his knowledge may be presumed as a fact. In other words, it has been well said that if the claimant 'raises his flag and keeps it up,' continuously for the statutory period of time, knowledge of his hostile claim of title may be inferred as a matter of fact."

We think the trial court was warranted in holding that the possession of appellee was open, notorious and adverse under the rules just announced. For 10 years he continuously occupied and cultivated the land as if it

were his own. Some of the witnesses who were acquainted with the lands testified they did not know that appellee was claiming title to the lands in controversy. It is not shown that these witnesses were closely associated with appellee or that they were in position to ascertain the nature of his claim with respect to the property. None of them testified to any act or admission by appellee that would evince a purpose on his part to hold only permissively during the 10 year period that he exercised complete dominion over the property. The conclusion of the trial court on this issue is supported by a preponderance of the evidence.

The decree is affirmed.