LOLLAR v. APPLEBY.

4-8541                                        210 S. W. 2d 900

Opinion delivered May 3, 1948.

Rehearing denied May 31, 1948.

*Charles D. Atkinson, Charles W. Atkinson* and *Malcolm E. Rosser,* for appellant.

*Rex W. Perkins* and *G. T. Sullins,* for appellee.

MINOR W. MILLWEE, Justice. Appellants, Chester O. Lollar and wife, instituted this suit on April 9, 1947, as an *ex parte* proceeding under §§ 10958-10969, Pope's Digest, to quiet their title to a tract of land located in Block 18, Masonic Addition to the City of Fayetteville, Arkansas.

On May 16, 1947, appellees, George Appleby and Herbert A. Lewis, filed separate interventions alleging they were owners and in possession of separate lots lying immediately south of, and adjacent to, the tract owned by the Lollars; that appellants were claiming ownership of a strip of land 2½ feet wide along the line forming the north boundary of appellees' lots and the south boundary of appellants' lot; that appellees had been in adverse possession of the 2½-foot strip for more than seven years under color of title and payment of taxes, and appellants had never been in possession of the strip; that many years ago a line was established between appellants and appellees land by the then adjacent owners and a fence erected thereon, which still stands and has been since recognized by all adjacent owners as the true boundary line. Appellees prayed that the line marked by the fence be fixed as the boundary line between their lots and the property of appellants; that appellees' title to the disputed strip be quieted and appellants enjoined from trespassing thereon.

Appellants filed separate answers denying the material allegations of the interventions. On July 16, 1947, appellant, Phillips Motor Co., Inc., intervened and alleged that it purchased the tract owned by the Lollars on May 24, 1947. The motor company adopted all pleadings filed by the Lollars and prayed that its title to the entire tract be confirmed. It was stipulated that Susie E. Vaulx, appellants' predecessor in title, and each of the appellees, had paid taxes on the respective tracts owned by them for more than seven years next before the filing of the suit under a description listed on the tax records as "Pt. Block 18, Masonic Addition to Fayetteville."

After hearing the evidence and viewing the lands involved, the trial court entered a decree quieting the title of Phillips Motor Co. in all the tract claimed by it lying north of the line established by the fence now standing on a portion of said tract. The title of appellees was quieted to the disputed 2½-foot strip lying south of

said fence line and north of the lands as described in the respective conveyances to appellees. Appellants have appealed from that part of the decree which finds that appellees acquired title to the disputed strip by adverse possession.

The lot of appellants faces west on College Avenue in an old residential section of the City of Fayetteville and is described as being 263.6 feet long and 102.25 feet wide. Dr. W. B. Welch acquired the lot in 1882 as part of a tract described as being 450 feet long and 102.5 feet wide. This lot ran clear through block 18 of Masonic Addition from College Avenue on the west to Washington Avenue on the east. Some time after his purchase of the tract, Dr. Welch erected a fence along the south line which extended the full length of the block and fenced out the 2½-foot strip in controversy. In 1908, he conveyed a portion of the east side of the tract to H. M. Stringfellow and wife.

Dr. Welch resided on the lot now owned by Phillips Motor Co., until his death in 1917. He devised the property to his widow, Julia G. Welch, who continued to reside on the property until her death in 1931. Susie E. Vaulx became the owner of the lot under the terms of the will of her aunt, Julia G. Welch. Miss Vaulx lives in Muskogee, Oklahoma, and has never resided on the property. She has made periodic visits to Fayetteville for many years and rented the premises to tenants through local agents until March 29, 1947, when she conveyed to appellants, C. O. Lollar and wife. Prior to the sale to the Lollars, her agent had a survey made of the lot without notice to appellees.

Julia G. Welch was residing on the lot owned by appellants in January, 1920, when appellee, George Appleby, purchased his lot which lies immediately south of appellants' tract and is described as being 245 feet long and 125 feet wide. The lot was vacant at the time of Appleby's purchase and he immediately proceeded to build his home thereon. Appleby testified that he and Mrs. Welch had a discussion about the fence while his

house was under construction and, without being questioned on the subject, she told him the fence was on the line between the two lots. She also suggested that the fence be removed from between the front part of their houses and this was done for a distance of 75 to 90 feet east from College Avenue. Since 1920, Appleby has continued to reside on, use and occupy the land up to that part of the fence still standing and the line marked by removal of the west end of the fence. He has mowed the grass and maintained a flower bed up to the fence line and exercised complete dominion over the property for more than 27 years. Julia G. Welch recognized the fence line as the boundary between their properties until her death in 1931 and Appleby's right to possession and use of the disputed strip has never been disputed.

Appellee, Herbert A. Lewis, purchased his lot in 1935. The lot is described as being 205 feet long and 75 feet wide and faces east on Washington Avenue. In the deed conveying the property to Lewis the lot is described as being in section 6 instead of section 15, where all the lands involved herein appear to be situated. Appellants say that Lewis is bound by this deed and that the description employed conclusively demonstrates that his lot could not be contiguous to the lot of appellants. Appellants made no objection to the introduction of the deed in the proceedings in the chancery court. Moreover, prior conveyances to the grantor of Lewis correctly describe the property as being in section 15. The error in the deed to Lewis was clearly a clerical misprision which the trial court had a right to correct in the rendition of the decree.

The house on the Lewis lot was constructed about 1890. The fence between his lot and the lot of appellants and Mrs. Read, east of appellants, is a part of the fence constructed by Dr. Welch. There are some old iron stobs on the line of the old fence which appear to have been placed there many years ago. During the 12½ years Lewis has resided on the property he has claimed and occupied to the fence and the adjacent owners have never disputed his possession of the strip in controversy. Former owners of the Lewis lot and adjacent owners appear

to have recognized the fence erected by Dr. Welch as a division line.

Chester O. Lollar and James T. Phillips, manager of Phillips Motor Co., testified that they did not know appellees were claiming title to the 2½ foot strip off the south side of the lot described in their deeds. However, both knew of the location of the fence and stated that they paid little attention to it and made no inquiry about the line at the time of their purchase.

The agent of Susie E. Vaulx who negotiated the sale to the Lollars stated that he saw the fence, but attached no importance to it. Similar testimony was given by the agent who looked after the property for Susie E. Vaulx for several years prior to the sale to the Lollars.

Appellants are correct in their contention that they held record title to the strip of land in controversy, according to the survey, and that the burden of proof, therefore, rested on appellees, who were without color of title, to establish their claim by showing that their possession was actual, open, hostile and exclusive for the statutory period of seven years. In *Culver* v. *Gillian,* 160 Ark. 397, 254 S. W. 681, the court said: "In cases of adverse possession under color of title the actual possession, by presumption of law, is constructively extended to the limits defined in the paper conveyance which gives color of title. In the case, however, of adverse possession without color of title, the adverse possession is limited to the land actually adversely occupied. . . .

"While, in such cases, to constitute an adverse possession, there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised over the premises continuously, for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or that his knowledge may be presumed as a fact. In other words, it has been well said that if the claimant 'raises his flag and keeps it up,' continuously for the statutory period of time, knowledge of his hostile claim of title may be inferred as a matter of fact." Later cases have reaffirmed the principles announced in this case. See *Terral* v. *Brooks,* 194

Ark. 311, 108 S. W. 2d 489; *Stricker* v. *Britt,* 203 Ark. 197, 157 S. W. 2d 18; *Davis* v. *Strong,* 208 Ark. 254, 186 S. W. 2d 776.

In 2 C. J. S., Adverse Possession, § 70, p. 587, it is said: "When the proof shows that the possession is held by one and title by another, the law, not favoring wrong, will presume that the possession is held in subordination to the legal title, and to constitute an adverse holding against the true owner it must be shown either that the true owner had knowledge of the adverse holding or that the latter was so open and notorious as to raise a presumption of notice to him, equivalent to actual notice."

We think the evidence on behalf of appellees meets the requirement which the law thus places upon them, and that the trial court's finding that appellees acquired title to the disputed strip by adverse possession is supported by the great preponderance of the evidence. The openness and notoriety of the possession of appellees for a term much longer than the statutory period of seven years is undisputed and was sufficient to raise a presumption of notice to appellants, and their predecessors in title, of the adverse nature of appellees' holding. The fact that appellees were ignorant or mistaken as to the location of the true line does not prevent them from asserting title by adverse possession if they held possession with the intention of claiming to the fence line regardless of the location of the true boundary. *Goodwin* v. *Garibaldi,* 83 Ark. 74, 102 S. W. 706; *Wells* v. *Bentley,* 87 Ark. 625, 113 S. W. 639; *Miller* v. *Fitzgerald,* 169 Ark. 376, 275 S. W. 698. Appellees bought their lots on the assumption that the fence then standing across the entire block was on the line and have continued to occupy the disputed strip up to the fence line as their own without recognition of the right or title of adjacent owners.

Since we conclude that the chancellor properly held that appellees acquired title to the disputed strip by adverse possession, it is unnecessary to determine whether an agreement to establish the fence line as a boundary may also be inferred from long continued acquiescence and occupation to such line by the parties and their pred-

ecessors in title, as has been held in such cases as *Deidrich* v. *Simmons,* 75 Ark. 400, 87 S. W. 649, and *Gregory* v. *Jones,* 212 Ark. 443, 206 S. W. 2d 18.

Affirmed.