LILLIE MAE SPOTTS, ADM'X.* ET AL *v.* ELLA LEWIS

5-4302                                              419 S. W. 2d 622

Opinion delivered October 23, 1967

*John F. Gibson,* for appellants.

*Robert M. Smith,* for appellee.

---

*Willie Mae Lewis was substituted as Administratrix on the day of trial; however, the trial court and attorneys made no change in subsequent records. So for clarity we leave the case as originally styled. Our opinion, however, binds the present administratrix.

LYLE BROWN, Justice. Bennie Lewis and Ella Lewis, subsequently divorced, owned a tract of land by the entirety. Upon the complaint of Ella Lewis, appellee here, the chancellor ordered the ejectment of appellants, widow and certain children of Bennie Lewis, deceased. Ella Lewis claimed under a right of survivorship. Appellants claimed title by adverse possession on the part of Bennie Lewis claimed under a right of survivorship. Appellants Bennie's death. The chancellor held (1) that under an estate by the entirety, one spouse cannot hold adversely to the other, and (2) that adverse possession was not in fact established. Those are the two issues argued on appeal.

In 1945 Bennie and Ella Lewis, husband and wife since 1929, acquired by the entirety the involved 175.85 acres. They lived on the land prior to purchase. The acreage, mostly unimproved, adjoined some sixty-six acres which Bennie owned in his own right. In 1946 Ella took the youngest of seven children and went to Milwaukee, Wisconsin. (Over the years the other children followed her there.) Bennie obtained a divorce on grounds of desertion in 1947. The land was not mentioned in the decree. In 1948 Bennie remarried and lived on the involved land until his death in 1964. At the time of Bennie's death, his widow and their eight children were living on the land. This suit followed, by which Ella claimed title under the 1945 deed to Bennie and Ella Lewis, then husband and wife. The appellants— the widow and her children by Bennie Lewis—argue Ella lost her title by adverse possession of Bennie Lewis. They also plead estoppel; however, *the single point argued on appeal is that of adverse possession.*

Assuming, without deciding, that adverse possession can defeat the record title of Ella Lewis, we examine the record to resolve the correctness of the chancellor's finding that adverse possession was not established.

From the time Ella Lewis left for Milwaukee in 1946 until Bennie's death in 1964, Bennie lived on the land; he cleared, cultivated, sold timber, and paid the taxes; he borrowed money and received allotment payments; he built another house and raised a new family. In none of his financing did he execute a mortgage or give written assurance that he was the sole owner; however, those who financed Bennie Lewis considered the land to belong to Bennie and they testified that Bennie was generally reputed to be the owner. Ella Lewis testified that she made several requests of Bennie Lewis that he share some of the proceeds of the farm with her. In no instance did he respond favorably; at the same time, he did not assert that his refusal to divide was based on a claim of exclusive ownership.

On the other side of the coin, the chancellor found these elements which, as stated in his written findings, weighed against the claim of adverse possession:

(1) Ella Lewis produced a letter from Attorney Will Irvin, dated August 18, 1947. Attorney Irvin wrote her on behalf of Bennie Lewis, seeking her signature on a waiver of service and entry of appearance in Bennie's divorce case. In that letter she was assured that the divorce "will not interfere with your property rights. He can get a divorce and you will retain the same interest in the property that you now have."

(2) Ella Lewis testified that on one occasion after the divorce Bennie told her the land ought to be sold and she replied in the negative; that on another occasion she asked "for her part" and he responded that her part was needed for taxes; that at no time during her many visits (the first one in 1951 and regularly after 1955) did Bennie Lewis assert that he was claiming the land exclusive of her; that on those visits to her mother she and Bennie would talk "about the kids and about the land, but he never would offer me what I would like."

(3)    At no time between the separation of the husband and wife and the death of Bennie Lewis did he place any incumbrance on the land.

(4)    Ella Lewis produced two letters written by Bennie in May and July 1962. In the first letter he offered Ella fifty dollars "to sand your name off the deed." He explained he had no desire to sell the land; "I want to fix it so the children can't sell it. When I am dead you will have a home as long as you live. The children will need a home. I want to fix it so nobody can't sell it. . . I want the children to have a home as long as they live and their children." He told Ella that Willie (then his wife) was agreeable to the plan.

Ella did not reply to that letter so in July a note was sent by Bennie to a daughter in Milwaukee. He requested her to deliver the message to Ella. It was of the same tenor as the first letter. Ella testified she did not respond to those propositions; that in March 1964 she was in Dermott and met Bennie on the street; that they talked about the land and she suggested it be sold and the proceeds divided equally. Bennie died the following June. Ella attended the funeral.

Again, assuming that adverse possession could in law overturn the record title of Ella Lewis, we must look for the evidentiary requirements to be met. Precedent is found in *Anderson* v. *Walker*, 228 Ark. 113, 306 S. W. 2d 318 (1957). Mr. and Mrs. Walker owned an estate by the entirety. The husband left the wife and she continued to occupy the property. She obtained a divorce on constructive service in 1947. In 1955 the husband brought suit against the heirs of the deceased wife, the heirs having continued in possession of the property after the death of Mrs. Walker. In that situation our court invoked this rule:

"We have frequently and consistently held that, 'where entry upon land is permissive, the statute

will not begin to run against the legal owner until an adverse holding is declared and notice of such change is brought to the knowledge of the owner.' ''

The chancellor discussed *Anderson* and found that the record title of Ella Lewis had not been overturned by the heirs' claim of adverse possession. We are unable to say his findings are against the preponderance of the evidence.

The principal weakness in the heirs' claim of adverse possession is the lack of proof that Bennie Lewis ever openly declared that he was holding adversely to Ella's title. That declaration need not be affirmatively made; it can be established by acts ''so notorious and unequivocal that notice must be presumed.'' *McGuire* v. *Wallis*, 231 Ark. 506, 330 S. W. 2d 714 (1960). In *McGuire,* a tenant in common was ''in charge of the farm, managing it for his own benefit, paying taxes, and paying the installments upon the mortgage debt; but these facts are insufficient to support a claim of adverse possession against his co-tenants.'' Bennie Lewis' activities may be similarly described, with the added statement that he did treat the land as his own when borrowing money on open account.

The chancellor gave considerable weight to the letters written by Bennie Lewis in 1962. Appellants contend those letters were written *after* Bennie's title had ripened by adverse possession and have no probative value. We do not agree. A nominal offer of purchase is often made ''to buy peace and avoid litigation.'' However, an offer may be considered by the trier of facts if it sheds light on the nature of the defendant's possession. That is true even if the offer is made after the seven year period has elapsed. *Baughman* v. *Foresee*, 211 Ark. 149, 199 S. W. 2d 596 (1947). Other statements in those letters are far more enlightening on Bennie's state of mind. We refer to his avowed intention to so arrange the title that he, Ella, and all his

children would have a home during their lifetime. That is clearly inconsistent with a state of mind that closets a claim of exclusive and adverse title.

We concede that the ouster of the present family of Bennie Lewis evokes our sympathies; however, it should be remembered that through the years they have enjoyed all the fruits of the land. Ella could have put her rightful share to good use. Bennie's and Ella's children all gradually migrated to the mother in Milwaukee and their rearing became her burden, with no financial help from the father, Bennie. Furthermore, Bennie Lewis owned at the time of his death 66.30 acres adjoining the involved tract. Ella testified that she makes no claim to that land.

As in *Anderson* v. *Walker,* we do not here reach appellants' contention that in an estate by the entirety one spouse can hold adversely to the other. That is on the theory that divorce dissolves the entirety estate. Numerous holdings of this court have answered that question in the negative. Those holdings seem to be contrary to the great weight of authority. Our Legislature, declaring "that numerous injustices have been done" because entireties could not be dissolved in a divorce proceeding, enacted Act 340 of 1947. That Act permits chancery courts to dissolve entireties in divorce proceedings and to treat the parties as tenants in common. Act 340 is not here applicable because the estate was created prior to the passage of the act. *Jenkins* v. *Jenkins,* 219 Ark. 219, 242 S. W. 2d 124 (1951). We recognize the many instances in which this court, absent Act 340, has held that divorce cannot dissolve an entirety estate. We are reluctant to disturb those holdings because, as evidenced in *Jenkins,* they are looked upon as establishing a rule of property. Yet we can conceive, as did the Legislature, of situations where blind adherence to the rule could make a mockery of justice. So we say the plea of adverse possession to an entirety estate could conceivably succeed in a situation where

there is clear evidence of unequivocal notice to the former spouse of intention to hold adversely.

Affirmed.