LITMAN C. VICK *v.* HENRY M. BERG

5-5670                                  473 S.W. 2d 858

Opinion delivered December 13, 1971

*Wilton E. Steed,* for appellant.

*Gaughan, Laney, Barnes & Roberts,* for appellees.

CARLETON HARRIS, Chief Justice. Litman C. Vick, appellant herein, contends that he is the owner, by virtue of adverse possession, of certain lands in Ouachita County, Arkansas. Appellees, Henry M. Berg and wife, and Henry M. Berg as agent and attorney in fact for Gette Berg Jordan and Leah Berg Shyer, assert that they are the owners of the lands in question. On June 25, 1969, Vick filed a petition in the Ouachita Chancery Court alleging that he was the owner and in possession of the 58 acres of land,[1] here under discussion; that he had acquired title by taking possession more than thirty years ago; that he has had color of title; that the lands had been under fence for at least thirty years, and he asked that title to the lands be quieted and confirmed in him. Statutory notice was given of the petition and appellees filed an answer asserting that they were the owners, and in possession of the premises. On trial, the court found that appellees were the record owners of the lands, and had paid taxes on said lands continuously since the early 1900's; that Vick had never paid taxes and did not have color of title to any portion of the lands. It was further found that, with the exception of a quarter of an acre upon which Vick had built a home, that he had not had actual or pedal possession of the lands continuously for the statutory period. Title to all lands was quieted in appellees except the quarter of an acre, which is particularly described in the decree, and this was quieted in appellant. From the decree so entered, Vick brings this appeal. For reversal, two points are asserted, *viz,* that the court erred in finding that appellees were record owners of the land, and mainly that the court erred in finding that appellant did not have actual or pedal possession of all the lands in question continuously for the full statutory period. We proceed to a discussion of these issues.

As to the first point, we quickly find no merit. Apparently, though it is not entirely clear, counsel for appellees endeavored to establish the chain of title by sim-

_____

[1] Actually, it appears that the amount of land involved is something over 54 acres.

ply making reference to the deed records. This, of course, was improper, but there was no objection from appellant nor any demand for the introduction of certified copies, or the instruments themselves. We have said that where there are no objections, the point is considered waived when the case reaches the Supreme Court. *Allen* v. *Ozark Land Company,* 55 Ark. 549, 18 S. W. 1042. Actually, it is likely that no objection was made because Vick really does not controvert the fact that appellees are the record owners of the lands. In addition, this suit was not instituted by appellees, but by appellant, and the burden is on him to establish *his title,* rather than rely on any weakness of the title of the Bergs. *Rinke* v. *Shackleford,* 248 Ark. 941, 455 S. W. 2d 83. Whether the decree properly quieted title in appellees as against the world is not a matter to concern Mr. Vick, since he is only interested in whether title was properly quieted as against him.

The property claimed by appellant was sometimes referred to in the trial of the case as three separate parcels, these parcels being identified with reference to three fences, and were termed the "outer tract", the "inner tract", and the "yard". The "outer tract" was property inside the "outer fence" but outside the "inner fence", and consisted of approximately 50.3 acres. The "inner tract" referred to land within the "inner fence" but outside the "yard fence" consisting of approximately 3.6 acres. The "yard" included the land inside the yard fence and the house occupied by appellant, and consisted of approximately ¼ of an acre. The court ruled against Vick with respect to both the "outer" and "inner" tracts, but did quiet title to the "yard" in him, and this appeal relates only to the "outer" and "inner" tracts.

Vick stated that he moved to the property 33 years ago, built his house, and had lived there since that time. This was in conflict with a deposition earlier given when Vick said he lived away from the property for seven or eight years, but moved back about 1957; that he built the "yard fence" in 1953; according to the witness, a man named Daniels built the "inner fence" sometime after

1953.[2] Appellant built the "outer fence" in 1961.[3] In support of his claim, he mentioned that he had maintained camping facilities and a refreshment stand during the early years (this apparently being on the quarter acre where the house was located), had cut firewood and posts from timber on the entire tract, and had used the land for hunting and fishing.

In determining whether he has sufficiently supported his claim, we will briefly discuss these various facts. Let it be said at the outset that, though alleged, he had no color of title, and though having commenced living on the quarter acre some 33 years before the litigation, no claim to the land within the "outer" or "inner" fences was made prior to 1961.[4] Using the lands for hunting and fishing really adds nothing to his claim for the evidence reveals that many other persons likewise used the lands, without objection from Berg, or without objection from appellant. In fact, the record reflects that numerous people, up and down the river[5] built fishing or hunting shacks, the Bergs having no objection.[6] George

[2]Daniels, under a lease from Berg, constructed this fence for the purpose of holding cattle, and, according to the evidence, used it for approximately 10 years.

[3]There is a dispute in the evidence relative to when the fences were built, two witnesses testifying that the "outer fence" was not completed until 1968.

[4]From the record:

"Q. When did you decide you were going to claim ownership of the land?

A. Well, about the time I fenced it. I figured it wasn't nobody coming, I was going to go ahead and fence it up. * * *

Q. * * * When did you first decide you were going to claim that you owned this land?

A. Well, I told you I put a fence on it when I figured it.

Q. At the time you built the fence?

A. Yes."

[5]The northern boundary of the property was on the Ouachita River.

[6]Henry Simpson testified that he had a place about 2,000 feet up the river from Vick; that he knew Berg owned the property, and that he (Simpson) claimed no ownership interest, and that, as far as he knew the other fishing camps had the same status.

Bowers, an employee of the Bergs, testified that the land was used by appellees to grow timber, and that during his 32 years employment, timber had been sold twice from the tract, once in 1941, and once in 1966. He said that the policy of his employers had always been to let the people stay in the little houses on the river, more or less as a matter of good will. As far as the cutting of posts and firewood over the area, this is insufficient to constitute notice of a claim of ownership. *Sanderson v. Thomas*, 192 Ark. 302, 90 S. W. 2d 965.

Frank Landers, engaged in the timber business, testified that he bought timber from Berg in the spring of 1966, such timber being located within both the "inner" and "outer" fences, and started cutting it in the fall. He said that he discussed the matter with Vick on the morning he started in on the cutting. According to the witness, Vick asked if Landers were there to cut the timber and the latter replied that he had a deed and was going to cut it all, as well as some timber on other lands that he had bought from other parties. "He said, 'I wish you wouldn't cut this first.' I said, 'Why, this is the Berg's timber,' and he said 'yes'." The timber was cut, and Vick neither demanded nor received any money. Several witnesses who frequently had contact with Vick testified that he had never made any sort of claim to the land and Vick himself only mentioned one person that he said he had told of his claim.

Though Vick testified that he had built the "outer fence" in 1961, he did not appear to be at all positive about this fact. For instance, when asked about it during the taking of a deposition in January, 1970, he replied "Oh, it's been several years ago that I put that fence up around it. * * * It's been six or seven years ago.* * *" Subsequently, he reiterated a third time that the fence was put up "Six or seven years ago." Of course, "six or seven years ago" would have only taken his claim back to 1963 or 1964, which would have been less than seven years before the commencement of the action. Other portions of his evidence are also rather in conflict with his claim of adverse possession. After he had taken

the stand to testify in rebuttal, the record reveals the following on cross-examination:

"Q. Have you ever paid any taxes on this property?

A. No, I haven't yet.

Q. Why haven't you?

A. Well, *it hadn't belonged to me yet* [Our emphasis].

Q. It doesn't belong to you now, does it?

A. *Well, I'm in care of it anyway* [Our emphasis]. * * *

Q. How come you never did pay any taxes on this land?

A. Nobody never come down and I didn't own it.

Q. And that's why you didn't pay taxes on it?

A. *I didn't own it at that time, no* [Our emphasis].

Q. Do you own it now?

A. I figure I do.

Q. Have you paid any taxes on it?

A. No, but I am fixing to."

In summary, while the record reflects that appellees had notice of Vick's presence on the land, the record does not reflect that appellees had notice of his claim of ownership. In fact, it appears that Vick was under the impression that all he had to do was stay on the premises for more than seven years, and he would automatically come into ownership. This, of course, is not correct. To the contrary, he had to assert his claim of ownership

against the world for more than seven years before that ownership would be established.

In *Hill* v. *Surratt,* 240 Ark. 122, 398 S. W. 2d 225, we pointed out that the quantum of proof necessary for a trespasser to establish title to a tract of land by adverse occupancy is greater where he has no color of title, and in such case he must show pedal or actual possession for the extent of the claimed boundaries for the required seven years, and in *Lollar, et al* v. *Appleby, et al,* 213 Ark. 424, 210 S. W. 2d 900, we likewise stated that where there is no color of title, the adverse possession is limited to the land actually occupied. It does appear that the quarter of an acre awarded Vick by the chancery court was actually occupied, but we agree with the chancellor that the proof relative to the rest of the land sought was entirely insufficient to establish the adverse claim.

Affirmed.