Cite as 2024 Ark. App. 295

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-22-585

| | |
|---|---|
| CODY STEVENS<br><br>APPELLANT<br><br>V.<br><br>HARVEY N. HILLENBURG AND MARK HILLENBURG<br><br>APPELLEES | Opinion Delivered May 8, 2024<br><br>APPEAL FROM THE STONE COUNTY CIRCUIT COURT [NO. 69CV-21-14]<br><br>HONORABLE HOLLY L. MEYER, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Cody Stevens appeals the Stone County Circuit Court order quieting title of ten acres of real property to Mark Hillenburg. On appeal, Cody argues that the circuit court erred by finding that Mark and his father, Harvey Hillenburg, adversely possessed the property. We affirm.

Harvey and Mark live in two mobile homes on property in Stone County. Cody has record title to the property on which Harvey and Mark reside.

On February 5, 2021, Cody filed an unlawful-detainer complaint against Harvey and Mark alleging that they had detained possession of his property after he had attempted to gain possession by civil notice. He further alleged that Harvey had fired guns at his agent and

obstructed the county road to the property. Cody requested a writ of possession, damages, and attorney's fees and costs.

On March 25, the Hillenburgs answered and counterclaimed for a declaratory judgment and claimed adverse possession pursuant to Arkansas Code Annotated section 18-11-106 (Repl. 2015). They asserted that they had adversely possessed the property around their homes, and they further alleged that they had color of title and had paid taxes on real property adjoining the property around their homes.

The court held a bench trial on May 31, 2022. Cody testified that he acquired property from Vickie Wyatt in 2019 that includes ten acres around the Hillenburgs' houses. He stated that he wrote Harvey a letter asking him to vacate, but Harvey refused. During Cody's testimony, he introduced an aerial photograph of the relevant properties.



On cross-examination, Cody explained that before purchasing the property, he saw a "private drive" sign, so he did not inspect the entire property, and he consequently did not see the Hillenburgs' houses. He noted that he checked a survey, and the survey showed that he would own the private drive. Cody testified that since he purchased the property, the Hillenburgs have posted additional no-trespassing signs and have threatened him with firearms. Following Cody's testimony, he rested his case.

The Hillenburgs then presented their case. Harvey testified that his former wife purchased property in 1987.[2] He explained that after she purchased the property, he

---

[1]In his appellate brief, Cody included this redacted image of the aerial photograph. This redacted image omits several properties that are in the original aerial photograph, but the omitted properties are irrelevant to this case.

[2]Harvey explained that his wife initially purchased the property with her sister, Lisa Pearrow, and Lisa gave him and his wife her interest in 1997.

mistakenly placed their mobile home north of the true property line—on the property that Cody had purchased from Wyatt—and that he had lived on the wrong property since 1987. During Harvey's testimony, the parties labeled the property that Harvey lives on as the contested property and the property that Harvey actually purchased as the adjoining property.

Harvey explained that he moved a single-wide trailer onto the contested property in 1987 and that he installed a new mobile home there in 1999. He also stated that he had installed several deer stands, a deer blind, four-wheeler trails, and a refuse pile. He noted that a tree had grown around the straps of one stand. He testified that he hunted on the property until 2014[3] and that his children and grandchildren continue to hunt on the property. He stated that he had the timber cut in 1999 and that he cleared around the houses and maintained the four-wheeler trails. He noted that he uses the four-wheeler trails daily. During Harvey's testimony, the Hillenburgs introduced photographs of the structures and the trails.

Harvey also stated that he gave Petit Jean Electric permission to run power lines across the contested property about thirty years ago, but he did not recall the specific individual to whom he gave permission. Petit Jean Electric installed the lines across the central eastern portion of the contested property. Harvey acknowledged that he did not fence the perimeter of the contested property.

---

[3]Harvey explained that he had a massive heart attack in 2014 and that he is now disabled.

The Hillenburgs also introduced the following hand-drawn map of the ten-acre contested property.



Harvey testified that he paid taxes on the adjoining property, which is south of the contested property, from 1987 through 2005 and that he deeded the adjoining property to his son Mark in 2005. He explained that after he deeded the adjoining property to Mark, Mark moved a mobile home onto the contested property. He noted that Mark currently lives there with his fiancée and two children. Harvey testified that Dina Wright and her husband reside on the adjoining property, and he noted that no one inhabits the property to which the Wrights have record title that is south of the adjoining property.

Harvey stated that he has never met Cody, but he had met Cody's father, Glen Stevens. He explained that starting in February 2019, Glen had entered the contested

5

property and that he had asked Glen to leave. Harvey stated that he installed a gate to obstruct Glen's access.

Mark, Harvey's son, testified that in 2005, his father deeded him the adjoining property. He noted that he has paid taxes on the adjoining property since 2005. Mark further explained that in 2005, he moved a mobile home onto the contested property and installed a deer stand on the contested property. He testified that he still lives on the contested property, that he mows and maintains the contested property, and that he uses the trails. He noted that he hunts intermittently on the contested property in the fall, winter, and spring.

Dina Wright testified that she has lived on the adjoining property since 1993, and she acknowledged that the Hillenburgs have record title to the adjoining property. She further stated her belief that she owned the adjoining property. Her deed is actually to the tract south of the adjoining property.

On June 15, 2022, the court entered an order finding that the Hillenburgs had adversely possessed the contested property under the common-law requirements and also under the statutory requirements found in Arkansas Code Annotated section 18-11-106. The court found that they had maintained; cut the timber on; and hunted on, gated, and held the contested property for their exclusive use and dwelling. The court further found that the contested property is contiguous to the adjoining property. The court thus denied Cody's unlawful-detainer complaint, and it quieted title to the contested property in Mark. Cody appealed the order to this court.

This court reviews adverse-possession and quiet-title actions de novo on the record and will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Parkerson v. Brown*, 2013 Ark. App. 718, 430 S.W.3d 864. In reviewing a circuit court's findings of fact, this court gives due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Strother v. Mitchell*, 2011 Ark. App. 224, 382 S.W.3d 741.

On appeal, Cody raises two issues concerning the Hillenburgs' proof establishing the common-law elements of adverse possession. To prove the common-law elements of adverse possession, a claimant must show that he has possessed the contested property continuously for seven years and that the possession has been actual, open, notorious, continuous, hostile, and exclusive, and it must be accompanied with an intent to hold against the true owner. *Collier v. Gilmore*, 2018 Ark. App. 549, 562 S.W.3d 895; *Thompson v. Fischer*, 364 Ark. 380, 384, 220 S.W.3d 622, 625 (2005).

We first address Cody's argument on the common-law hostility requirement. Cody argues that the Hillenburgs presented insufficient evidence of hostile intent that they intended to hold the contested property against the true owner. He relies on Harvey's testimony that he mistakenly placed his and Mark's mobile homes on the contested property.

However, this court recently held that the hostility element should be determined by behaviors and not primarily by inquiring into a claimant's subjective intent. *Collier*, 2018 Ark. App. 549, 562 S.W.3d 895. In *Collier*, the claimant believed he owned the contested tract of land for forty years, and during that time, he possessed and farmed the contested

7

property; however, the claimant was mistaken on where the relevant deed placed the true boundary line. We favored the claimant's conduct over his intent when determining hostile use and held that "the possession was 'hostile' because it was to an extent greater than the deed anticipated; and his conduct was not subordinate to [the true owner's property] interests or done with [the true owner's] permission." *Id.* at 9, 562 S.W.3d at 900.

In this case, even though Harvey testified about the initial mistake, his actions of dwelling on and maintaining the property established his intent to hold the property as his own, and there is no dispute that the Hillenburgs possessed the contested property without permission. Given these circumstances, we find no error by the circuit court.

Cody also argues that the Hillenburgs presented insufficient evidence that they possessed the entire ten acres of the contested property. He concedes that the Hillenburgs actually possessed their mobile homes and curtilage, but he argues that as to the remaining acreage, the Hillenburgs merely hunted and rode four-wheelers which does not constitute possession.[4]

The proof required as to the extent of possession and dominion may vary according to the location and character of the land. *Morrison v. Carruth*, 2015 Ark. App. 224, 459 S.W.3d 317; *Moses v. Dautartas*, 53 Ark. App. 242, 922 S.W.2d 345 (1996). It is ordinarily

---

[4]On this point, Cody additionally argues that he constructively possessed the property pursuant to Arkansas Code Annotated section 18-11-102 (Repl. 2015) by having color of title and paying taxes. The statute concerns unimproved and unenclosed land. However, Cody did not raise the statute argument to the circuit court. Accordingly, we decline to address it on appeal.

sufficient that the acts of ownership are of such a nature as one would exercise over his own property and would not exercise over that of another and that the acts amount to such dominion over the land as to which it is reasonably adapted. *Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1991).

Our supreme court has held that for adverse possession, "there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised over the premises continuously for the time limited by the statute, that the owner of the paper title would have knowledge of the fact, or that his knowledge may be presumed as a fact." *Utley v. Ruff*, 255 Ark. 824, 827, 502 S.W.2d 629, 632 (1973) (quoting *Culver v. Gillian*, 160 Ark. 397, 400, 254 S.W. 681, 682 (1923)). The supreme court has stated that "if the claimant 'raises his flag and keeps it up,' continuously for the statutory period, knowledge of his hostile claim of title may be inferred as a matter of fact." *Id.* at 828, 502 S.W.2d at 632 (quoting *Culver*, 160 Ark. at 400, 254 S.W. at 682).

In *Moses*, this court affirmed the circuit court's finding that "work[ing] on the property, cutting grass, raking leaves, cutting and hauling wood" as well as storing shingles and a large pile of lumber was sufficient evidence of possession of unenclosed land. 53 Ark. App. at 247, 922 S.W.2d at 348.

In this case, we hold that the circuit court's finding that the Hillenburgs possessed ten acres of the contested property is not clearly erroneous. In its oral ruling, the court concluded "there was use of this 10-acre property—and the entirety of the 10-acre property." The court specifically found that the Hillenburgs maintained the property, cut the timber,

hunted, and held the contested property for their exclusive use and dwelling since 1987. The evidence supports this finding. Most significantly, the Hillenburgs' hand-drawn map shows the locations of the structures, trails, and driveway across the entire ten acres. Accordingly, given the particular facts of this case, we find no error by the circuit court.

Cody additionally challenges a statutory element of adverse possession. In 1995, the General Assembly added the requirement that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years to the existing common-law element of adverse possession. Ark. Code Ann. § 18-11-106;[5] *see Collier*, 2018 Ark. App. 549, at 5 n.2, 562 S.W.3d at 898 n.2. Specifically, subdivision (a)(2) requires an adverse-possession claimant to have held color of title to real property contiguous to the property being claimed by adverse possession for a period of at least seven years and during that time paid ad valorem taxes on the contiguous real property to which the person has color of title.

Here, Cody argues that the Hillenburgs failed to establish that their mobile homes and curtilage are contiguous to any property satisfying the requirements under subdivision (a)(2). In other words, Cody concedes that the evidence establishes that the contested

---

[5]If a claimant's right to the disputed property vested before 1995, he need not comply with the 1995 statutory change. *Collier*, 2018 Ark. App. 549, at 5 n.2, 562 S.W.3d at 898 n.2; *Sutton v. Gardner*, 2011 Ark. App. 737, 387 S.W.3d 185. Here, the circuit court found that the Hillenburgs satisfied the statutory requirements. However, Harvey claimed possession of the contested property starting in 1987. Because we need not address the merits of Cody's statutory argument, it is unnecessary to determine whether the statutory change applies.

property is contiguous to the adjoining property, which satisfies subdivision (a)(2). Cody, however, claims that the specific location of the Hillenburgs' mobile homes and curtilage is not contiguous to the adjoining property. Thus, Cody raises this argument in the event we reverse the circuit court's finding that the Hillenburgs' adversely possessed the entire ten acres of the contested property. Because we do not reverse the circuit court's finding concerning possession of the ten acres of the contested property, we need not address this point.

Cody's final point on appeal also hinges on whether this court reverses the circuit court's finding concerning possession of the entire ten acres of the contested property. He argues that if this court concludes that the Hillenburgs presented insufficient evidence that they possessed the ten acres, we must also reverse as to their mobile homes and the curtilage because the Hillenburgs presented no evidence concerning the curtilage boundaries. Again, because we do not reverse the circuit court's finding concerning the ten acres, we need not address this point.

Affirmed.

THYER and MURPHY, JJ., agree.

*Jeremy B. Lowrey*; and *Patterson Law Firm, P.A.*, by: *Jerry D. Patterson*, for appellant.

*Morgan Law Firm, P.A.*, by: *Nathan S. Morgan*; and *Blair & Stroud*, by: *Barrett S. Moore*, for appellees.